2013-1665, -1666, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADJUSTACAM, LLC,

Plaintiff-Appellant,

v.

NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.,

Defendants-Cross-Appellants

and

SAKAR INTERNATIONAL, INC.,

Defendant-Cross-Appellant

Appeals from the United States District Court for the Eastern District of Texas
in Case No. 10-CV-329, Chief Judge Leonard Davis

## NON-CONFIDENTIAL BRIEF OF DEFENDANTS-CROSS-APPELLANTS NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.

Kent. E. Baldauf, Jr.
Daniel H. Brean
Anthony W. Brooks
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

Richard G. Frenkel
LATHAM & WATKINS
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

Yar R. Chaikovsky
McDERMOTT, WILL &
EMERY
275 Middlefield Rd., Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7447

*Counsel for Defendants-Cross-Appellants Newegg, Inc.,
Newegg.com, Inc., and Rosewill, Inc.*

September 25, 2014

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Adjustacam v. Newegg, 2013-1665

<u>CERTIFICATE OF INTEREST FOR NEWEGG INC.</u>

Counsel for Newegg Inc. hereby certifies the following:

1.     The full name of every party or amicus represented by me is:

Newegg Inc.; Newegg.com, Inc.; Rosewill, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

No publicly held company owns ten percent or more stock in Newegg Inc.; Newegg.com, Inc.; or Rosewill, Inc.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Kent E. Baldauf, Jr., The Webb Law Firm
Daniel H. Brean, The Webb Law Firm
Anthony W. Brooks, The Webb Law Firm
Herbert A Yarbrough, III, Yarbrough & Wilcox, PLLC
Debra Elaine Gunter, Yarbrough Wilcox, PLLC
John N. Zarian, Parsons Behle & Latimer
Robert A. Matson, Parsons Behle & Latimer
Justin Neil Stewart, Parsons Behle & Latimer
Dana M. Herberholz, Parsons Behle & Latimer

Christopher Cuneo, Parsons Behle & Latimer
Edward R. Reines, Weil Gotshal & Manges
Richard G. Frenkel, Latham & Watkins
Yar R. Chaikovsky, McDermott Will & Emery

Dated:  September 25, 2014          /s/ Kent E. Baldauf, Jr._____
                                   *Counsel for Defendants-Cross-Appellants*
                                   *Newegg, Inc. Newegg.com, Inc., and*
                                   *Rosewill, Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES .......................................................... viii

JURISDICTIONAL STATEMENT .............................................................. 1

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF FACTS ............................................................................ 6

   I.   Preliminary Statement ....................................................................6
   II.   The Parties ......................................................................................8
   III.   AdjustaCam's Infringement Allegations .......................................9
   IV.   AdjustaCam's Validity Arguments .............................................17
   V.   AdjustaCam's Nuisance-Value Settlements and Demands ..........19

SUMMARY OF THE ARGUMENT ......................................................... 26

STANDARD OF REVIEW ........................................................................ 29

ARGUMENT ............................................................................................. 30

   I.   The District Court Abused its Discretion by Not Finding This Case Exceptional and Egregious ...........................................................30
      A.   AdjustaCam Filed and Prosecuted This Case in Bad Faith ....................32
         1.   AdjustaCam Brought this Case for the Improper Purpose of Obtaining Nuisance-Value Settlements ...............................................33
         2.   Nuisance Litigation is Exceptional and Egregious ..............................38
         3.   Nuisance Litigation Should be Strongly Discouraged..........................41
      B.   The Accused Cameras Could Not Possibly Have Infringed...................44
      C.   AdjustaCam's Validity Positions Were Frivolous ...................................47
      D.   The District Court's Actions Cumulatively Reveal Its Abuse Of Discretion ..................................................................................48

   II.   AdjustaCam's Appeal Must be Dismissed for Lack of Subject Matter Jurisdiction..................................................................................51

CONCLUSION ......................................................................................... 54

## <u>CONFIDENTIAL MATERIAL OMITTED</u>

The material omitted on pages 2-3, 19-21, 23-24, 26, and 33 reflects the terms of settlement agreements that were designated as confidential by AdjustaCam, and are subject to a protective order entered by the district court.

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Am. Standard, Inc. v. York Int'l Corp.*,
   244 F. Supp. 2d 990 (W.D. Wis. 2002)................................................34

*Amsted Indus. v. Buckeye Steel Castings Co.*,
   23 F.3d 374 (Fed. Cir. 1994) ......................................................30

*Artese v. Academy Collection Service*,
   No. 3:96-cv-2546-GLG, 2000 U.S. Dist. LEXIS 1186
   (D. Conn. Jan. 18, 2000).................................................. 34, 42

*Benitec Austl, Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007) ..........................................51

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005) ..........................................31

*Colombrito v. Kelly*,
   764 F.2d 122 (2d Cir. 1985) ................................................36

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ................................................ 30, 44

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed. Cir. 2010) ................................... 51, 52

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
   903 F.2d 805 (Fed. Cir. 1990) ..........................................15

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011) ................................... 34, 40

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ..........................................23

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   134 S. Ct. 1744 (2014) ................................. 29, 30, 31, 44

*Ingenuity 13, LLC v. Doe*
  No. 2:12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564
  (C.D. Cal. May 6, 2013) ...................................................................36

*Jang v. Boston Sci. Corp.*,
  532 F.3d 1330 (Fed. Cir. 2008) ........................................................53

*Kelora Systems, LLC v. Target Corp. et al.*,
  No. 11-1548 (C.D. Cal.) ......................................................................6

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013) ................................................... 39, 41

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ................................................... passim

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ...........................................................37

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
  603 F.3d 943 (Fed. Cir. 2010) ...........................................................39

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013) ................................................... 35, 37

*NTP, Inc. v. Research In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) .........................................................53

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) .......................................................... passim

*Rude v. Westcott*,
  130 U.S. 152 (1889) ..........................................................................23

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
  57 F.3d 1054 (Fed. Cir. 1995) ...........................................................52

*SanDisk Corp. v. Kingston Tech. Co.*,
  695 F.3d 1348 (Fed. Cir. 2012) ................................................... 52, 53

*Seismograph Svc. Corp. v. Offshore Ray-Dist, Inc.*,
  263 F.2d 5 (5th Cir. 1958) .................................................................50

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ............................................................................51

*Upthegrove v. Health Prof'ls, LTD.*,
  No. 07-cv-0596-BBC, 2009 U.S. Dist. LEXIS 4546
  (W.D. Wis. Jan. 21, 2009) ................................................................37

## Statutes

28 U.S.C. § 1295(a)(1) ...............................................................................1

28 U.S.C. § 2107(a) ....................................................................................1

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 1338(a) ....................................................................................1

35 U.S.C. § 285 ................................................................................... passim

## Rules

Federal Rule of Appellate Procedure 4 .....................................................1

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from this same civil action was previously before this Court or any other court of appeals. Newegg Inc., Newegg.com, Inc., and Rosewill, Inc. (collectively, "Newegg" or "the Newegg Defendants") and their undersigned counsel are unaware of any other actions now pending in this or any other court that will directly affect or be directly affected by this Court's decision in the present appeal.

# JURISDICTIONAL STATEMENT

<u>Newegg's Cross-Appeal</u>:

The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Newegg filed a timely and proper notice of appeal under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

<u>AdjustaCam's Appeal</u>:

For reasons discussed below, this Court does *not* have subject matter jurisdiction over AdjustaCam's appeal and AdjustaCam's appeal must be dismissed.

# STATEMENT OF THE ISSUES

1.    Whether the district court erred by failing to find this case exceptional and egregious to award Newegg its attorneys' fees and expert fees under 35 U.S.C. § 285 and its inherent authority, respectively, despite clear and unrebutted evidence showing that this lawsuit was meritless, and that it was filed and prosecuted to leverage the high cost and burden of litigation to coerce a nuisance-value settlement payment from Newegg.

2.    Whether this Court has subject matter jurisdiction over AdjustaCam's appeal, given that the case on the merits was mutually and voluntarily dismissed in its entirety, and no case or controversy remains between the parties.

CONFIDENTIAL MATERIAL OMITTED

## STATEMENT OF THE CASE

AdjustaCam, LLC ("AdjustaCam") brought this action in July 2010 against 59 defendants, including the Newegg Defendants, alleging that certain camera products sold by Newegg infringed United States Patent No. 5,855,343 ("the '343 Patent"), entitled "Camera Clip."  A0004.  The '343 Patent is owned by Global-Media Group, LLC, and AdjustaCam is the exclusive licensee of the patent. A1789.

Immediately after filing suit, AdjustaCam began seeking to settle with the defendants for amounts far below the cost of defense.  All defendants other than the Newegg Defendants and Sakar International, Inc. ("Sakar") settled with AdjustaCam well before trial and were dismissed.  A0004.  Generally, each defendant paid [[█████████████]] and, in many cases, [[█████████]] as a settlement fee, and always as a round number.  A1282.

A *Markman* hearing was held on February 9, 2012 to construe various claim terms of the '343 Patent.  A0013.  Magistrate Judge Love issued a *Markman* order on April 10, 2012, which was subsequently adopted in full by Chief Judge Davis on June 7, 2012.  A0013-27; A0012 ("the *Markman* Order").

Among the terms addressed in the *Markman* Order was the term "[r]otatably attached / adapted to be rotatably attached / adapted to rotatably attach." A0020-23.  The parties disputed whether the term as used in the claims "allow[s] for a

2

CONFIDENTIAL MATERIAL OMITTED

'rotatably attached' object to rotate over more than a single axis." A0020. The district court agreed with the defendants, noting that "[t]he claims plainly describe each 'rotatably attached' object as rotating about a single axis." A0022.[1] The district court also explained that "[e]very reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a single axis of rotation." A0021. Although the term "did not require construction," the district court nonetheless resolved the claim interpretation dispute, holding that "'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." A0022-23 (prohibiting the parties from contradicting the district court's resolution of the dispute as the case went forward).

In the few months following the April 2012 *Markman* Order, AdjustaCam quickly proceeded to settle with and dismiss the few remaining defendants from the case. A1282; A0147-53. These companies generally paid AdjustaCam [[▆▆▆▆▆▆▆▆▆]] to be dismissed, which is consistent with the pre-*Markman* nuisance settlements—and again, always as a round number. A1282.

---

[1] As the district court explained (A0020), the claims of the '343 Patent referred consistently to a "rotatably attached" hinge member rotating in only one of two specific axes of rotation, depending on whether it was rotating with respect to the camera or the support frame. *See, e.g.,* Claim 1 ("a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member"); ("a support frame rotatably attached to said hinge member . . . said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation").

3

On August 27, 2012, after considerable expert discovery was completed and the case was on the verge of summary judgment and *Daubert* proceedings, AdjustaCam filed a motion to dismiss its claims against the Newegg Defendants with prejudice.   A2136-37.   The motion also sought to dismiss the Newegg Defendants' invalidity and non-infringement declaratory judgment counterclaims for lack of subject matter jurisdiction, *with* prejudice, based on a covenant not to sue that extinguished the case or controversy with respect to the counterclaims. *Id*. According to AdjustaCam, the reason for its motion was that it had "recently resolved its claims against almost all of the remaining Defendants," including defendants whose products were sold by Newegg, such that "NewEgg/Rosewill is no longer selling unlicensed webcams manufactured by any other Defendant." A2137.   Thus, AdjustaCam professed a "desire[] to simplify this case by focusing its claims going forward solely upon Defendant Sakar and Defendant Kohl's, which is accused of infringement solely on account of Sakar manufactured products.   NewEgg/Rosewill's remaining damages exposure . . . is relatively *de minimis*, and is dwarfed by the damages exposure of Sakar."   A2137-38.

Newegg opposed the motion to dismiss, arguing that its declaratory judgment counterclaims should not be dismissed *with* prejudice.   A2093-95 (explaining that "the covenant not to sue offered by AdjustaCam lacks certain critical elements required to protect Newegg from charges of infringement by

AdjustaCam or its successors regarding future Newegg products"). AdjustaCam subsequently filed a new, unopposed motion that sought to dismiss its infringement claims with prejudice and Newegg's counterclaims without prejudice, which the district court granted. A1986-87; A155.

Newegg then filed a motion for attorneys' fees and expert fees, which was denied. A0156, A0160. Newegg also submitted an unopposed bill of costs in the amount of $8,492.66, but when the district court entered final judgment, the judgment did not reflect Newegg's unopposed costs, erroneously stating that "all costs are to be borne by the party that incurred them." A0199-200, A0001-03.

Newegg moved the district court to amend the erroneous judgment, A0199-200, but when the correction was not made before the appeal deadline Newegg filed a notice of appeal seeking review of the denial of its motion for attorneys' fees. A0160; A0195. AdjustaCam filed a separate notice of appeal the same day, seeking review of the district court's claim construction order. A0193. Although AdjustaCam's notice of appeal also referred to the district court's final judgment, that final judgment was not premised on any claim construction issues, nor did AdjustaCam seek a consent judgment incorporating the claim construction order as the basis for a judgment of non-infringement. Rather, the final judgment merely reflected the parties' agreed mutual dismissal of the case. A0001-03; A1986-87.

The appeals were docketed by this Court but then deactivated due to Newegg's pending motion to correct the judgment. Dkt. No. 17. When the district court had still not decided Newegg's motion to correct the judgment after six months, Newegg withdrew the motion, having been forced by the district court's extensive and unexplained delay in ruling on a simple clerical motion to forego recovering Newegg's costs to avoid further delay of this appeal.[2] A0162. This Court subsequently reactivated the appeal. Dkt. No. 20.

Meanwhile, after Newegg had withdrawn its motion to correct the judgment, and shortly before this appeal was reactivated, the Supreme Court decided *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which relaxed the standard for finding a case "exceptional" under Section 285.

## STATEMENT OF FACTS

### I.    PRELIMINARY STATEMENT

Unable to squeeze a nuisance-value settlement payment from Newegg after more than two years of litigation, patent assertion entity AdjustaCam decided it

---

[2] Newegg believed that further delay would materially prejudice its ability to recover any amounts subsequently awarded against AdjustaCam because AdjustaCam is a shell entity that can quickly and easily be taken into bankruptcy and have its assets dispersed. Newegg has been prejudiced by such delay in the past. *See Kelora Systems, LLC v. Target Corp. et al.*, No. 11-1548 (C.D. Cal.) at ECF Nos. 543, 551 (Newegg's award of costs in the amount of $28,304.80 and subsequent mooting of motion to appoint receiver due to Kelora's bankruptcy).

would rather dismiss Newegg with prejudice than face the inevitability that this case would be resolved on the merits in Newegg's favor.

AdjustaCam never genuinely believed that Newegg infringed its patent, nor reasonably could it. The '343 Patent covers adjustable cameras with very precisely defined axes of rotation that are facially absent from Newegg's accused products. Even after the district court emphatically rejected AdjustaCam's attempt to sidestep its patent's claim language, AdjustaCam pressed on with the case and made overreaching and unsupportable nuisance-value settlement demands. Finally, when summary judgment briefing was underway and trial was looming, AdjustaCam, having already obtained settlement payments from almost all other defendants, cut and ran to avoid putting its patents in jeopardy and thus preserve its shakedown business.

The filing and prosecution of this action by AdjustaCam was solely intended to extort nuisance-value settlement fees from defendants, not to resolve any legitimate claims of infringement or damages. Baseless cases that abuse the judicial system for financial gain must be found exceptional and warrant fee shifting.

By the time Newegg filed its motion for fees, AdjustaCam had forced Newegg to spend more than $350,000 in attorneys' fees and expert fees to defend itself, not to mention the considerable additional expense of the present appeal.

7

A1793-94.[3]  Prevailing parties that are willing to contest meritless claims rather than succumb to the offer of a nuisance settlement serve as important safeguards for the system.  With the proliferation of mass patent litigation based on a business model of seeking quick, small nuisance settlements from many targets without a genuine intent to pursue the case to the merits, this safeguard is particularly important because such broadside abuses sour opinion leaders and the public on the patent system.    Yet, unless fees are shifted in cases such as this one, the decision to incur big expenses to defend meritless cases, rather than paying a tiny fraction to settle, become so unattractive that there will be even less resistance to this cynical but successful patent monetization approach.

## II.    THE PARTIES

AdjustaCam is an LLC that is exclusively in the business of patent litigation.  As a wholly-owned subsidiary of Acacia Research Group, LLC, its business follows the all-too-familiar model of using the burden and expense of patent litigation as leverage to extort settlement fees from defendants.  A1779.

Newegg is an online-only retailer that primarily sells computers, computer components and peripherals, and consumer electronics.  Newegg conducts its business primarily via www.newegg.com.  Rosewill is Newegg's private-label

---

[3] Approximately $60,000 of additional expert fees were invoiced to Newegg via the Parsons Behle firm.  Newegg seeks recovery of all its fees and expenses, including these additional expert fees and attorneys' fees incurred during and subsequent to its fee briefing before the district court.

brand for certain products.  Rosewill does not manufacture its products, but simply purchases and re-sells its products under its "Rosewill" brand name.

Many of AdjustaCam's target defendants in this case were successful online retailers like Amazon.com and Newegg, who simply purchased and re-sold the accused cameras, not manufacturers who actually made the accused cameras.

### III.    ADJUSTACAM'S INFRINGEMENT ALLEGATIONS

AdjustaCam is the exclusive licensee of United States Patent No. 5,855,343 ("the '343 Patent"), entitled "Camera Clip."   A1789.   The '343 Patent is generally directed to a camera clip that supports a camera when sitting on a flat surface or when attached to an object, such as a computer monitor:





*Fig. 4*

'343 Patent, Figs. 1, 2, 4.  The clip allows the camera to rotate in two distinct directions about distinct axes of rotation.

First, as shown in Fig. 1, the camera can be rotated to pan side-to-side.  The specification explains: "[h]inge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16."  '343 Patent, at 4:17-19.  Second, as shown in Fig. 2, the camera can be tilted upward and downward.  The specification explains: "[h]inge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18.  First axis 26 is perpendicular to second axis 32."  '343 Patent, at 4:21-24.

These particular axes of rotation are expressly required by all independent claims in the '343 Patent.  *See, e.g.,* '343 Patent, Claim 1 ("a hinge member

adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, *rotating, about a first axis of rotation*, relative to said hinge member"); *id* ("a support frame rotatably attached to said hinge member . . . , said hinge member *rotating about a second axis of rotation* relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation").[4]

To be clear, the camera products claimed in the '343 Patent require *three* distinct components of importance to this case: (1) a camera; (2) a hinge member; and (3) a support frame. While the camera product—including the hinge member—rotates about two axes, the camera of the '343 Patent *itself* only rotates about one axis; this is what is described, and this is what is claimed. This is evident from the claim language, which specifies that the *camera* is "rotatably attached" to the *hinge member* of the claimed apparatus such that the camera rotates about a single axis of rotation (the claimed "first axis of rotation"). Similarly, the *support frame* of the apparatus is itself "rotatably attached" to the *hinge member* such that the support frame rotates relative to the hinge member about a separate, single axis of rotation (the claimed "second axis of rotation"). Importantly, the two axes of rotation with respect to the three components are distinct, and are distinctly claimed. Accordingly, the district court correctly held that the term "[r]otatably

---

[4] All emphases herein are added unless otherwise indicated.

attached / adapted to be rotatably attached / adapted to rotatably attach" as used in the claims indicated that "'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." A0022-23.

Unlike the camera covered by the '343 Patent, AdjustaCam accused products do not rotate about a single axis of rotation. Instead, these products (the "Accused Ball-and-Socket Products") include a camera having a ball connected to a support frame having a socket, the two components being connected via a ball-and-socket joint, which facilitates rotation about *multiple axes*.

This constitutes substantial and material differences between the Accused Ball-and-Socket Products and the '343 Patent claims, as illustrated by the following photographs of the accused Rosewill RCM-8163 (below left) and Hercules Classic (below right) webcams, which are representative of the Accused Ball-and-Socket Products:



A1786; *see also* A1755-75.  The nature of these ball-and-socket joints is that they allow for rotation for each of the parts of the camera product about multiple axes—the camera is able to spin and pivot about multiple axes of rotation with respect to the socket (not just a single axis), and the support frame is likewise able to spin and pivot about multiple axes of rotation with respect to the ball (not just a single axis).  A1755-75.  Comparing the accused products to the claims and specification of the '343 Patent clearly shows that AdjustaCam's infringement allegations were baseless.  A young child could see and understand the difference.

Another key reason the '343 Patent claims do not map to the Accused Ball-and-Socket Products is the fact that, unlike the *three* distinct components claimed in the '343 Patent, the Accused Ball-and-Socket Products have only *two* distinct components of importance to this case: (1) a camera having a ball; and (2) a support frame having a socket.  The use of a ball-and-socket joint between these two components eliminates the need for a third element—an intermediate hinge member—as claimed in the '343 Patent.  A ball-and-socket camera is simply an inapt product to accuse of infringement given the precisely claimed three-part camera of the '343 Patent and its limited rotation capabilities.  The Accused Ball-and-Socket Products work in a fundamentally different and, arguably, more streamlined and elegant, manner.

Because of its expressly claimed hinge member, the '343 Patent claims require that the camera and support frame each be able to independently rotate about only a single axis of rotation. *See* A0022 (district court explaining that "[t]he claims plainly describe *each* 'rotatably attached' object [i.e., the camera and support frame] as rotating about a single axis"). But in the Accused Ball-and-Socket Products, both the camera and support frame components can rotate about multiple axes with respect to each other. The mere fact that the cameras can be *both* twisted *and* tilted about the socket ends the infringement inquiry because it establishes rotation of the camera about at least two distinct axes. The *Markman* order conclusively established that such a configuration was outside the scope of the claims of the '343 Patent.

Long before the district court's *Markman* Order, however, the Accused Ball-and-Socket Products were facially non-infringing—the ball-and-socket joints are prominent and plainly visible, and their functionality is plain. At the outset of this lawsuit no reasonable litigant could realistically have expected to avoid summary judgment. Yet even after the *Markman* Order cemented AdjustaCam's inability to prove infringement by the Accused Ball-and-Socket Products, AdjustaCam pressed on with the case in hopes of recovering a nuisance settlement.

After the *Markman* Order, AdjustaCam served the expert report of John C. Muskivitch who—despite the district court's clarification that "rotatably attached"

14

objects are "limited to a single axis of rotation"—opined that the Accused Ball-and-Socket Products included a hinge member "adapted to be rotatably attached to the camera." *See generally* A1253-60. By continuing to press its frivolous infringement arguments, and by forcing Newegg to retain a testifying expert to respond to such arguments, AdjustaCam's bad faith is evident. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, and inference is proper of bad faith.").

AdjustaCam's only defense of its baseless case is a hollow contention that its infringement allegations are consistent with the district court's constructions because "what Newegg/Rosewill allege is a ball and socket joint is actually a modified ball and socket joint . . . because there is a channel that restricts movement." A1194.

    

A1194-95. According to AdjustaCam, "[t]his restricted movement results in two functionally independent joints which have ranges of movement independent of each other." *Id.* In other words, AdjustaCam's nonsensical position is that even

though the camera can move in *two* different and distinct directions with respect to the support frame, the fact that a channel restricts that movement compared to a channel-less camera means that somehow the Accused Ball-and-Socket Products are "limited to a *single* axis of rotation." A0022-23.

The testimony of AdjustaCam's expert highlights the absurdity of this contention. In Dr. Muskovitch's deposition, he explained that the various rotations are "separate" because "if I rotate it around to the center, there is nothing that forces it to move, to tilt or to sway to either side." A0482-83; A0484 ("There is two axes, but they are separate."). Even though the supposedly "constrained" ball-and-socket joint enables the camera to rotate in multiple directions, as long as one only chooses to rotate the camera in only a single direction at a time, Dr. Muskovitch concluded that the joint is "*limited* to a single axis of rotation." The '343 Patent claims do not permit this baseless theory, which is akin to arguing that an airplane is merely a car unless and until it is actually in flight.

While the presence of two axes of rotation for the camera would be sufficient to preclude infringement, Dr. Muskovitch in fact conceded that there are at least *three* different axis of rotation for the camera in each Accused Ball-and-Socket Product: "This happens to be a constrained ball and socket joint. So [the camera] can [1] spin about the axis, it can [2] move forward, it may be able to [3] move to the side." A0485-87.

16

Based on the foregoing, there could never have been any infringement by the Accused Ball-and-Socket Products. AdjustaCam's argument that a garden-variety ball-and-socket joint can somehow morph into, and be recharacterized as, two separate (single axis) joints is manifestly unreasonable. Even a "constrained ball-and-socket joint," as contrived by AdjustaCam, allows movement in multiple axes of rotation and is, therefore, outside the reach of the '343 Patent's claims.

## IV.  ADJUSTACAM'S VALIDITY ARGUMENTS

Adjustacam also took frivolous positions in distinguishing prior art, such as Japanese Utility Model Publication No. H2-19997 to Irifune ("Irifune"). This prior art discloses a camera rotatably attached to a hinge member (mounting device (2)) via the threaded "camera attachment shaft (9)":



A1386, A1387, A1394.  AdjustaCam's expert took the indefensible position that Irifune does not disclose a device that can be rotatably attached to a camera. Specifically, Dr. Muskivitch reasoned that "[w]ith Irifune, the camera is not even attached to the hinge member until fully tightened down using camera attachment

17

shaft (9) and camera attachment screws (10 and (11)." A1263. Using an exceedingly narrow definition of "attached" ("permanently fixed joined, connected, or bound"), Dr. Muskivitch opined that Irifune did not meet the claim requirements because "[o]nce the camera is attached to the fixed part 2, the camera cannot rotate about a first axis relative to the hinge member." *Id.* Put another way, in Dr. Muskivitch's view, when the camera of Irifune is screwed all the way onto the hinge member, the camera cannot be rotated, and if the camera is loosened to permit rotation, the camera is not attached. *Id.* ("[E]ven assuming for the sake of argument that with Irifune the camera is attached, it is not "rotatably attached.").

As early as August 12, 2011, in a reexamination proceeding regarding the '343 Patent, the USPTO rejected the asserted claims as anticipated and/or obvious based on Irifune. A1425; A1431-36; A1376-96 (English translation of Irifune). Like Dr. Muskivitch later did in the litigation, during the reexamination proceedings patent owner Global-Media argued that the camera of Irifune is not "rotatably attached" to the hinge member because the camera "is not attached to the hinge member until *fully screwed or threaded to the hinge member.*" A1448. To make such an argument, Global-Media posited that the plain and ordinary meaning of attached is "permanently fixed, joined, connected, or bound." A1447. The examiner rejected this argument twice, correctly concluding that "it is clearly possible to loosen the attachment screw, to enable the pivoting of the camera

18

CONFIDENTIAL MATERIAL OMITTED

relative to support (fixed part 2) while the camera is still attached to the support." A1508-10; A1476.   After the third rejection based on Irifune, Global-Media cancelled all the asserted claims on September 20, 2012.   A1515-19, A1460, A1465, A1469-74, A1493, A1502-06.

## V.   ADJUSTACAM'S NUISANCE-VALUE SETTLEMENTS AND DEMANDS

Newegg, like its co-defendants, was served with a lawsuit and then approached by AdjustaCam to discuss settlement of the case.   Nearly every defendant proceeded to settle for a dollar amount well under the cost to defend oneself against the infringement allegations, most for less than [[          ]].  A1282 (AdjustaCam settlement agreement summary).

Just two months after filing this lawsuit in July 2010, AdjustaCam executed its first nuisance-value settlement with defendant Trippe Manufacturing in the amount of [[        ]].   A2182.   Soon thereafter, AdjustaCam settled with defendants Klip Extreme, LLC and Software Brokers of America (D/B/A Intcomex) for [[        ]], and a few months later AdjustaCam settled with defendants Phoebe Micro and jWIN for [[        ]] and [[        ]], respectively. *Id.*  By the time AdjustaCam dismissed Newegg in 2012, AdjustaCam had settled with at least:

- Twelve defendants for [[        ]] or less;
- Three defendants for an amount between [[                    ]];

19

• Five defendants for an amount between [[███████████████]]; and

• Two defendants for an amount between [[███████████████]].

A1282.  All of the payments made by the various defendants are facially a small fraction of the cost of defense of a patent infringement lawsuit.

None of the settlement payments have any demonstrable tie to the defendants' potential exposure in the litigation.  Yet AdjustaCam and its damages expert maintained that AdjustaCam's settlement agreements (and demands) were based on an established target royalty of $1.25-$1.50/unit. *See* A1195-97 ("In its licensing program for this litigation, AdjustaCam used this $1.25 - $1.50 per webcam royalty rate as a baseline for licensing the various defendants."); A1324 ("[T]he 14 lump-sum settlements were based on negotiations targeting a royalty of $1.25 to $1.50."); A1327-30.  This assertion has no support in the record. For example, looking at the units sold by AdjustaCam's licensees, the effective royalty rate for 15 of the lump-sum settlement ranged from a minimum of [[████████]] to a maximum of [[██████████]], with scattered data points in between:

CONFIDENTIAL MATERIAL OMITTED

**Attachment 12**
**Implied Royalty Rates**

[[  ]]

A1283-85.  Of those 15 settlements, not a single agreement included an effective royalty rate between $1.25 and $1.50 per unit for the defendant's known past sales figures.  *Id.*  Few were even close.

The alleged basis for the target royalty of $1.25-$1.50/unit was two settlement and license agreements entered into in 2001[5] by one of AdjustaCam's predecessors in interest, PAR Technologies, both of which included lump sum payments plus prospective running royalty components.  A1197; A1282; A1303-06.  One of these agreements had a tiered prospective royalty structure ranging from [[          ]] per unit as the number of units increased, and the other had a royalty structure of [[      ]] per unit that decreased to [[    ]] as the sales

---

[5] The PAR Technologies agreements were therefore dated five years prior to the hypothetical negotiation date in this case.  *See* A0540 (indicating that the hypothetical negotiation date in this case was 2006).

volume increased.  A0542-45; A0631.  From these two PAR Technologies agreements alone, to the exclusion of the more than a dozen other licenses that do not support the proffered royalty rage, and without making any comparison of the PAR Technologies licenses to the facts of the case against Newegg, AdjustaCam and its expert took the position that "a royalty in the $1.25 to $1.50 frame" was an appropriate and consistent target for licensing discussions.  A1305-06.

Moreover, this supposed "target" royalty was essentially fixed in AdjustaCam's view, as it was determined with no regard for price of the accused products sold by the defendants, the cost of the patented clip feature in the accused products, or even the number of units sold.  A1309-10 (characterizing $1.25 to $1.50 as the "intrinsic value of the patented feature" regardless of the sales price); A1311-12 (stating that the manufacturing cost of the patented camera clip is "not relevant" because "licensees have uniformly agreed to pay in the range of $1.25 to $1.50 per unit"); A1329-30 (explaining that a substantial increase in sales "wouldn't affect my analysis because the target had always been in the range of $1.25 to $1.50").

AdjustaCam also tried to paint its target royalty as an established royalty. A1201 ("AdjustaCam's settlement numbers were tied to a pre-established unit royalty of $1.25 - $1.50 per infringing device.").  But AdjustaCam falls far short of the high standard for proving and established royalty because AdjustaCam did not

CONFIDENTIAL MATERIAL OMITTED

show that the PAR Technologies licenses were of sufficient number and frequency "to establish a regular price for a license" and "reflect a general acquiescence in [the price's] reasonableness," that the royalty-establishing licenses were not settlements of threatened or actual litigation, and that the circumstances and rights of the licenses are comparable to those in the present lawsuit. *See, e.g., Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). None of these factors are met in this case—the two PAR Technologies licenses were both settlements of litigation and neither was shown by AdjustaCam to be in any way comparable to the dispute between AdjustaCam and Newegg other than the fact that both involve the '343 Patent. A1196; A0631.

In attempt to manufacture some credibility for its "target royalty," six of AdjustaCam's litigation settlement agreements were drafted to include [[ ███████

████████████████████████████████████████

████████████████████████████████████████

███████ ]]. A0545-49. This self-serving provision was included by AdjustaCam knowing full well that none of those six defendants would sell enough products to ever pay a running royalty during the term of the patent. A0558 (AdjustaCam's expert stating "I understand that AdjustaCam utilized this royalty structure because these licensees had a low volume of past sales it would be highly unlikely that total

CONFIDENTIAL MATERIAL OMITTED

volume sales would exceed the units included in the lump-sum payment"); A1313-14 (AdjustaCam's expert admitting that none of the six licensees ever reached the maximum number of sales and had to pay a running royalty).  Conveniently, AdjustaCam set the meaninglessly high number of units threshold, when divided by the lump sum payment, to equate to an effective royalty for past sales of [[████████████████████]].  A0631-33.  In reality, the parties to those six agreements, like every other settling defendant, paid nuisance value (between [[████████████████]]) to settle with AdjustaCam.  A631-33.  This effort by AdjustaCam to conceal the true nature of its agreements evidences its deceptive intent and bad faith.

Thus, all of AdjustaCam's settlement licenses in reality reflect a nuisance-value lump sum payment, and AdjustaCam has no evidence that it ever approached any negotiations with an intention to obtain its alleged target royalty.  Indeed, AdjustaCam's 30(b)(6) representative could not even verify that it was, at any time, aware of the number of units sold by any of the defendants with which it settled.  A1337-38.  Such information certainly does not appear in AdjustaCam's expert's report.

AdjustaCam also made multiple settlement offers to Newegg that reflect a nuisance value and were untied to Newegg's sales of the accused cameras.  By the time of a November 9, 2011 mediation, Newegg had confirmed sales of 14,499

units of the accused Rosewill products for total revenues of $63,760 and sales of 5,904 units of other accused products—the majority of which were supplied to Newegg by other named defendants—for total revenues of $33,379. A1784; A1226; A1362-63. Despite claiming entitlement to a minimum per-unit royalty between $1.25 and $1.50, AdjustaCam demanded $75,000—nearly three times its "target" per-unit royalty and more than 75% of Newegg's total revenue from sales of the accused products. A1226; A1362-63.

After mediation and before eventually dismissing Newegg, AdjustaCam made two additional nuisance-value settlement demands. In March 2012, after many of the accused Newegg products had been the subject of settlements between AdjustaCam and Newegg's suppliers, AdjustaCam demanded $65,000 to settle the case. A1227. Then, on July 11, 2012, less than two weeks after serving a report from its damages expert, AdjustaCam demanded more than $50,000 to settle. A1227; A1365. This reduced demand was still nearly three times the amount calculated by AdjustaCam's own expert. A1244-45 (calculating damages as to Newegg at $17,928—i.e., $1.25 x 14,342 units). In fact, AdjustaCam's expert admitted that this final demand, effectively more than $3.50 per unit, would be decidedly unreasonable. A1331 ("Q. Do you believe a per-unit royalty for Newegg of $3 or more than $3 would be reasonable? A. No.").

## SUMMARY OF THE ARGUMENT

AdjustaCam sued Newegg and dozens of other targets for the improper purpose of seeking nuisance-value settlement payments.  This patent lawsuit had nothing to do with any bona fide complaint of infringement.  Newegg should be reimbursed for its expenses contesting this meritless case.

Every agreement AdjustaCam obtained for its patent was for a dollar amount constituting a small fraction of the cost of defense, the majority for [[███████]] or less, and always as a round number.  Yet AdjustaCam desperately twisted this nuisance-value evidence in attempt to justify an unsupportable $1.25 per unit royalty demand—a supposed "target royalty" that never really existed and was never used as a target by anybody in settlement discussions.  In truth, the defendants universally paid off AdjustaCam because it was far cheaper than defending themselves, just as AdjustaCam intended.

Newegg refused to pay to make this case go away because AdjustaCam was abusively accusing products that did not, and could not, infringe the patent-in-suit, and was merely using the high cost of litigation defense to leverage nuisance settlements.  For justice to be done, somebody had to challenge AdjustaCam's baseless case and extortive patent litigation practices.  Newegg accepted the task, and took on the expense of defending against AdjustaCam's nuisance litigation campaign.

AdjustaCam's patent covers a camera that is claimed to rotate in a *single* axis of rotation.  But it is undisputed that AdjustaCam accused products having ball-and-socket joints such that, by definition, the cameras can be rotated about *multiple* axes of rotation.  This impossibility of infringement was apparent when the lawsuit was filed, but AdjustaCam pursued the case anyway because proving infringement was never the point of this lawsuit.

Even after the district court construed the claims decisively foreclosing AdjustaCam's effort to avoid the single-axis-of-rotation claim requirement, AdjustaCam pressed on undeterred as long as Newegg refused to accept AdjustaCam's many nuisance-value settlement offers.  Clearly AdjustaCam assumed that eventually Newegg would take the easy way out and just pay to make this case go away, but AdjustaCam was wrong.

After extensive and burdensome expert discovery solidified the long-known and fatal shortcomings of AdjustaCam's case, AdjustaCam simply walked away.  Finally conceding that its shakedown efforts against Newegg were futile and that its infringement case was doomed, AdjustaCam dismissed its case with prejudice, thus avoiding having to back up its allegations in court and put its patent in jeopardy.

To make matters worse, all Newegg's time and money (totaling more than $350,000 in attorneys' fees and expert fees at the time of Newegg's fee motion,

plus the considerable additional expenses of this appeal) was wasted on defending this frivolous lawsuit even though AdjustaCam knew for nearly a year before Newegg was dismissed that Newegg's potential exposure was truly *de minimis.* Newegg initially confirmed accused sales of less than $100,000, and that figure decreased over time as AdjustaCam' licensed Newegg's suppliers to a figure less than $20,000.

Unlike its many of co-defendants who settled with AdjustaCam and further funded AdjustaCam's nuisance litigation campaign against remaining defendants, Newegg took the expensive path and defended against the baseless and bad faith infringement assertions. Companies that are willing to help weed out bad actors by challenging their frivolous patent assertions should not be left to bear their litigation expenses without some reasonable and fair prospect of being made whole for having to endure such injustice. The protection of Section 285 is a critical safeguard to protect the system against the type of cynical, nuisance patent litigation that has given patents a bad name in some quarters. The business model of using meritless patent claims to extract nuisance payments from a broad cross-section of small businesses is, by design, normally kept out of this Court's view. Without a faithful application of fee shifting in this type of case, the sharp practices on display here will stay in the shadows rather than being exposed in the disinfectant of the light. And companies such as Newegg would have that much

less incentive to contest nuisance-settlement claims, even when fighting such claims appears to many to be economically irrational and distracting.

Nuisance litigation like AdjustaCam's cannot be encouraged, nor can it be immunized from fee-shifting merely because AdjustaCam eventually dismissed the case. Although bad faith nuisance litigation is commonplace among today's patent litigants, litigants are required to litigate in good faith. Because AdjustaCam did not litigate in good faith, this case "stands out from the others" and is exceptional under *Octane Fitness*, and is also sufficiently egregious to warrant expert fee shifting. This Court should declare as much and order the payment by AdjustaCam of Newegg's recoverable fees.

## STANDARD OF REVIEW

The denial of a motion for attorneys' fees under 35 U.S.C. § 285 is reviewed for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014) ("[A]n appellate court should review all aspects of a district court's § 285 determination for abuse of discretion.").

A district court's decision not to award expert fees under its inherent authority is also reviewed for an abuse of discretion. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012).

"The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would

necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'"  Highmark, 134 S. Ct. at 1748 n. 2 (quoting *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## ARGUMENT

### I.   THE DISTRICT COURT ABUSED ITS DISCRETION BY NOT FINDING THIS CASE EXCEPTIONAL AND EGREGIOUS

The Supreme Court in its recent *Octane Fitness* decision explained that, under the 35 U.S.C. § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  134 S. Ct. at 1756.  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*

While Section 285 allows for shifting of attorneys' fees, for egregious cases, such as those involving an abuse of the judicial process, district courts also have the inherent authority to award expert fees.  *MarcTec,* 664 F.3d at 921 (explaining that district courts should exercise this inherent authority in cases involving fraud or bad faith where "the very temple of justice has been defiled") (internal quotation marks omitted); *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (explaining that "abuse of the judicial process" justifies shifting expert fees).

As noted above, the district court decided Newegg's motion before *Octane Fitness* relaxed the standard for finding a case "exceptional" under Section 285. In denying Newegg's motion, the district court recited and applied the then-applicable law under *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), stating that absent material inappropriate conduct in litigation, "an exceptional case may only be found if 'both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'" A0005.

Unlike under the *Brooks Furniture* standard relied on by the district court, the exceptionality standard now does not, for example, require proof of both objective baselessness and bad faith, require misconduct to be independently sanctionable, or require proof by clear and convincing evidence. *Octane Fitness*, 134 S. Ct. at 1757-58. Here, because the district court erred by denying Newegg's motion under the strict *Brooks Furniture* standard, it certainly also erred under the far less burdensome *Octane Fitness* standard as well.

In denying Newegg's motion for attorneys' fees and expert fees, the district court misapprehended the evidence and the parties' contentions to reach a manifestly incorrect result. Under either the *Brooks Furniture* or *Octane Fitness* analytical framework, this "clearly erroneous assessment of the evidence" constitutes an abuse of discretion. *Highmark*, 134 S. Ct. at 1748 n. 2.

A.    AdjustaCam Filed and Prosecuted This Case in Bad Faith

According to the district court, "there is insufficient evidence that the action was brought in bad faith and for an improper purpose."  A0006.  In fact, the evidence of bad faith was overwhelming.

Not only did AdjustaCam pursue Newegg for two years on patent claims that were facially not infringed by the Accused Ball-and-Socket Products, but it pressed on with its case even after the *Markman* Order emphatically precluded any possible relief for AdjustaCam.  *See infra.*  All the while, AdjustaCam made Newegg spend considerable sums of money on discovery—including extensive expert discovery—defending against these baseless allegations.  To make matters worse, all this time and money was wasted on a frivolous lawsuit even though AdjustaCam knew that Newegg's potential exposure was minimal.  A1784; A1226; A1362-63.

This bad faith behavior is easily understood when one looks at AdjustaCam's purpose in bringing its lawsuits—to extract nuisance-value settlements.  Even the district court conceded that "the smaller settlements suggest this case was a settlement driven case."  A0007.  The merits of the cases had nothing to do with the filing and maintenance of the lawsuits.  As long as AdjustaCam could convince its target defendants that it was cheaper, and made more business sense, to pay a small sum of money to make the case go away than

to defend themselves, AdjustaCam would continue to collect its money without ever having to risk its patent and justify its positions in court. But AdjustaCam did not count on Newegg defending itself, and had no choice but to dismiss Newegg if it wanted to preserve its shakedown business.

> 1.  *AdjustaCam Brought this Case for the Improper Purpose of Obtaining Nuisance-Value Settlements*

As explained above, the record shows that AdjustaCam's settlement agreements are all for nuisance value. *See supra* Statement of Facts, Part V. The vast majority of Newegg's co-defendants paid [[          ]] or less to settle, more than half paying [[          ]] or less, and always as a round number. A1282.

None of AdjustaCam's post-hac efforts to align those nuisance-value agreements with its supposed damages calculations pass muster. *See supra* Statement of Facts, Part V. AdjustaCam's fabrication of an unsupportable and unused "target" royalty (e.g., A1195-96), as well as its illusory and never-paid "running royalty" components of six of its settlements (A0545-49; A0558; A1313-14; A0631-33), are no more than self-serving litigation-induced arguments. In reality, the effective royalties paid by Newegg's co-defendants were all over the map. A1283-85 (effective royalties ranging from [[              ]] per unit). Not even the two supposedly "foundational" PAR Technologies license agreements support a "target" (and, essentially, fixed) royalty of $1.25 to $1.50 per unit. A0542-45 (discussing royalty ranges from [[              ]]); A0631.

AdjustaCam's settlements, as well as the settlement demands made to Newegg, are not reasonably tied to any prior comparable licenses or the potential infringement exposure of any party. The settlement payments are merely round numbers set to encourage defendants not to fight the lawsuit on the merits due to the far greater expense involved in doing so. District courts cannot be allowed to turn a blind eye to such flagrant bad faith.

As this Court has observed, "low settlement offers . . . effectively ensure[] that [the patentee's] baseless infringement allegations remained unexposed, allowing [the patentee] to continue to collect additional nuisance value settlements." *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1327 (Fed. Cir. 2011); *see also Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) (Bad faith litigation tactics "force defendants into settlement and away from their legitimate defenses."); *Artese v. Academy Collection Service,* No. 3:96-cv-2546-GLG, 2000 U.S. Dist. LEXIS 1186, at *10 (D. Conn. Jan. 18, 2000) (holding that the filing of many lawsuits seeking relatively small settlements "gives rise to a suspicion of *barratry* and *champerty*").

Here, AdjustaCam's settlement amounts are very small compared to the cost of defense, showing that AdjustaCam's desire is to obtain nuisance settlement revenue rather than actually pursue meritorious claims in litigation. When Newegg, after nearly two years, still refused to settle and remained determined to

vindicate its legal positions, AdjustaCam's response exposed its true purpose in suing Newegg. Instead of trying to prove Newegg's defenses wrong in court, AdjustaCam simply walked away from its case. Such an "overall vexatious litigation strategy" that is wasteful of judicial resources evidences bad faith. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013).

Belated timing of dismissal can also evidence bad faith and justify fee shifting. In *Monolithic Power Systems*, the case was deemed exceptional in large part because the plaintiff "withdrew its claims and granted covenants not to sue after substantial litigation had taken place," "moving to dismiss only after [defendants] had completed their filings for the final pretrial conference, wasting the parties' and the court's resources." *Id.* Likewise, here AdjustaCam waited two years to dismiss Newegg, knowing that Newegg's exposure was minimal, and did not actually dismiss Newegg until after Newegg had incurred considerable expense in attorney and expert fees. AdjustaCam cannot just lose interest and walk away with zero consequences after forcing Newegg to spend more than $350,000 in attorneys' fees and expert fees to defend itself up its fee motion. A1793-94; A1239 (explaining that Newegg expended $286,102.52 in attorneys' fees, plus $68,183.93 in expert fees through just September 2012). To date, Newegg has been forced to spend more than $450,000 by AdjustaCam's frivolous lawsuit, with

outstanding invoices of $60,000 at present, plus more by the time this appeal concludes.

In *Ingenuity 13, LLC v. Doe*, copyright plaintiffs were found to have acted in bad faith and sanctioned for fees in circumstances largely identical to those in this case. No. 2:12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013). First, the plaintiffs engaged in a strategy to file lawsuits against many defendants. *Id.* at *6-7. Due to "the high cost of litigation," "[m]ost defendants settled . . . , resulting in proceeds of millions of dollars due to the numerosity of defendants." *Id.* "For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort." Importantly, like AdjustaCam, in *Ingenuity 13* "[t]he Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case." *Id.* at *7.

Courts have acknowledged in various circumstances that it is fundamentally unfair for a plaintiff to force a defendant to endure substantial burden and expense in litigation and then lose interest and walk away from the case without any consequences. *See Colombrito v. Kelly*, 764 F.2d 122, 134-35 (2d Cir. 1985) (noting that awarding fees would be appropriate "if a litigant had made a practice

of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system"); *Upthegrove v. Health Prof'ls, LTD.*, No. 07-cv-0596-BBC, 2009 U.S. Dist. LEXIS 4546, at *12 (W.D. Wis. Jan. 21, 2009) ("Plaintiff cannot expect to subject defendant Rose to a year of litigation and walk away with no consequences."); *compare Monolithic Power Sys.*, 726 F.3d at 1367 (affirming award of fees, emphasizing that vexatious case was dismissed "after substantial litigation had taken place . . . wasting the parties' and the court's resources").

AdjustaCam professes that its desire was not to extort a nuisance-value settlement from Newegg. According to AdjustaCam, its decision to dismiss Newegg was for "strategic reasons unrelated to the merits"—essentially, "winnowing out" Newegg due to its *de minimis* infringement in comparison with Sakar once other defendants were dismissed and some of Newegg's sales became licensed. A1192-93. First, the timing of events, with the *Markman* Order triggering several small settlements in short order, does not bear out AdjustaCam's position. *See supra.* Second, AdjustaCam's implying that it is perfectly acceptable to file and maintain lawsuits against "*de minimis* infringers" so long as it "winnows them out" and dismisses them before trial is deeply misguided. Section 285's exceptional case provision exists precisely to prevent such "gross injustice to an alleged infringer." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988).

AdjustaCam knew of Newegg's minimal exposure long before Newegg was dismissed and, in fact, well before Newegg had to endure the burden and expense of the February 2012 *Markman* hearing and subsequent discovery, including considerable expert discovery.  A1784; A1226; A1362-63 (describing sales figures provided to AdjustaCam at least as early as November 2011); A2136 (August 2012 dismissal motion).    Shackling Newegg with considerable and unjustifiable litigation costs, despite Newegg's minimal exposure, is exceptional and abusive.

## 2.    *Nuisance Litigation is Exceptional and Egregious*

It is no secret that nuisance litigation brought by patent assertion entities is now fairly common and has become its own lucrative industry.  *See, e.g.,* Colleen V. Chien, *Patent Trolls by the Numbers*, Santa Clara University Studies Research Paper No. 08-13, *available at* http://ssrn.com/abstract=2233041 (March 13, 2013) (explaining that patent assertion entities file the majority patent lawsuits in the U.S., primarily targeting non-technology companies).

It would be clear error and an abuse of discretion, however, for the district court to conclude from this state of affairs that such litigation misconduct is not "exceptional" within the meaning of Section 285.  *Octane Fitness* explained that "an 'exceptional' case is simply one that stands out from others" regarding weak merits positions or litigation misconduct.   134 S. Ct. at 1756.   But the Court certainly did not suggest, let alone hold, that courts should allow themselves to

become desensitized to bad faith nuisance litigation just because it is commonplace. Such a conclusion contradicts the plain purpose of Section 285, as well as basic fairness and common sense.

Section 285 is supposed to be remedial—to correct for unfairness and injustice in a flexible, fact-specific manner. *See Octane Fitness*, 134 S. Ct. at 1753, 1756 n.6; *see also Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1312-13 (Fed. Cir. 2013). Neither Congress nor the Supreme Court was so cynical as to assume that patent litigation ordinarily involves bad faith and misconduct. The obvious assumption and requirement of Section 285 is that patent litigation will be brought and conducted in good faith, and that a case is "exceptional" when it sufficiently deviates from this expectation of litigants. *Cf. Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("[T]here is a presumption that an assertion of infringement of a duly granted patent is made in good faith.").

Moreover, using the court system to further AdjustaCam's extortive business practices is exactly the kind of egregious bad faith and abuse of the judiciary that warrants shifting of expert fees. *MarcTec*, 664 F.3d 907 at 921. Bad faith assertions of frivolous lawsuits unreasonably burden the litigation targets and the courts. Awarding expert fees is necessary where a plaintiff's vexatious misconduct forces a defendant to incur those expert fees unnecessarily, as those fees are not

compensable under Section 285. *Id.* at 921-22 (holding that expert fees were properly awarded because "Cordis was forced to incur expert witness expenses to rebut MarcTec's unreliable and irrelevant expert testimony," such that "MarcTec's vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285"). Here, as in *MarcTec*, AdjustaCam's experts' testimony was fatally flawed and could not possibly have proven infringement or AdjustaCam's alleged damages. AdjustaCam only proceeded into expert discovery to apply more pressure to Newegg for a nuisance-value settlement. For Newegg to have to spend huge sums of money on experts to rebut AdjustaCam's experts' baseless allegations, on top of all the other misconduct and expense inflicted by AdjustaCam in seeking nuisance-value settlements, is a grave injustice that cannot be permitted. *Id.* at 921 (inherent authority should be exercised to shift expert fees where "the very temple of justice has been defiled").

Patent litigation is supposed to resolve legitimate disputes surrounding bona fide infringement allegations, not facilitate nuisance-value patent monetization campaigns. *See Eon-Net,* 653 F.3d at 1328 ("[T]he appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith."). This Court should take this opportunity to clarify that litigation brought for the purposes of extorting nuisance-value settlements is exceptional and will not be tolerated or immunized

from fee-shifting simply because it is widespread. And to the extent a nuisance litigation campaign crosses into the expert discovery phase of a case, those expert expenses should not have to be borne by the defendants.

District courts cannot be allowed to make the presumption of good faith litigation unrebuttable by turning a blind eye to clear evidence of bad faith. Here, the district court appears to have looked the other way and thereby abused its discretion in multiple ways.

### 3. *Nuisance Litigation Should be Strongly Discouraged*

Section 285 and *Octane Fitness* recognize that the specter of fee-shifting is intended to have a deterrent effect on bad faith litigation and misconduct. 134 S. Ct. at 1756 n.6 (reminding district courts of "the need in particular circumstances to advance considerations of compensation and deterrence"). That purpose would be frustrated if all one had to do to avoid any possible fee-shifting is dismiss its case and avoid losing on the merits. AdjustaCam cannot avoid the expensive and wasteful consequences of its extortion tactics simply because it dismissed Newegg from the case. *See Kilopass*, 738 F.3d at 1317 ("[T]rial courts retain broad discretion to make findings of exceptionality under § 285 *in a wide variety of circumstances*.").

To be clear, a plaintiff's voluntary dismissal of a meritless case should be encouraged at the earliest juncture. But when a case is brought for reasons

unrelated to the merits and to obtain nuisance-value settlements, as it was here, the incentive to dismiss must also include an incentive to dismiss at a meaningful time—i.e., before substantial expense and burden is inflicted on the defendant. This Court should clarify that Section 285 provides those incentives, and that such plaintiffs who pursue such cases for too long before dismissing will be viewed as acting in bad faith and will be ordered to pay a defendant's attorneys' fees. Again, to the extent a nuisance litigation campaign crosses into the expert phase of a case, those expert fees and expenses should not have to be borne by the defendants.

Using the United States judiciary to leverage nuisance-value settlements also reflects selfish opportunism and unreasonably burdens the courts. *See Artese*, 2000 U.S. Dist. LEXIS 1186 at *10-11 ("[I]t is not merely the prejudice and costs to the opposing party but also the effect upon the judicial system of such litigation. When we consider the numerous other cases commenced by this plaintiff . . . there has been indeed a substantial burden on the judicial system."). Behavior that treats the judiciary as a pawn for nuisance-value settlement negotiations and makes courts waste considerable time and resources should be strongly discouraged.

By contrast, defendants like Newegg, who do not pay a patentee in a nuisance litigation simply to make a lawsuit go away, play an important role in the patent system. Such defendants insist that plaintiffs justify their positions and, when the plaintiffs cannot or will not do so, will vindicate their defenses in court.

42

If not for defendants like Newegg, abusive nuisance litigants would never be exposed because every case would settle (or be unilaterally dismissed by the plaintiffs) and conceal the misconduct. Section 285 should serve as a meaningful deterrent to patent abuses like those present in this case. Newegg and other similarly-situated defendants should not be discouraged from taking the more onerous course of defending themselves to help discourage abusive patent assertions.

Absent a meaningful fee-shifting standard where fees are reasonably attainable, defendants are more likely to simply settle nuisance litigations because the financial downsides of mounting a strong defense are overwhelming. If AdjustaCam's conduct is not deemed exceptional and egregious in this case, it will embolden nuisance litigants to continue their abusive conduct unchecked.

When the Supreme Court issued its *Octane Fitness* and *Highmark* decisions on the same day, notwithstanding the adoption of an abuse-of-discretion standard for appellate review in *Highmark*, the decisions collectively reflected a clear directive from the Supreme Court that fee shifting was supposed to be made easier to achieve, not harder. *See, e.g., Octane Fitness*, 134 S. Ct. at 1756 (characterizing the *Brooks Furniture* standard as "inflexible"; *id.* at 1756-57 (explaining that misconduct to justify fee-shifting need not be independently sanctionable); *id.* at 1758 (noting that the burden of proof for exceptionality is merely a preponderance

of the evidence, not clear and convincing). This Court has the power to police the district courts in their exercises of discretion, and the Supreme Court undoubtedly intended that reviewing courts would step in to ensure that Section 285 was administered in a fair and just manner. *See Highmark*, 134 S. Ct. at 1748 n. 2 ("The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'") (quoting *Cooter*, 496 U.S. at 405).

### B.    The Accused Cameras Could Not Possibly Have Infringed

The district court agreed with AdjustaCam that the Accused Ball-and-Socket Products included constrained ball-and-socket joints that restricted movement to some extent. A0006. According to the district court, this constricted movement made it possible for AdjustaCam to prevail in proving infringement:

> [i]f the ball and socket joint truly restricts the range of movement *such that it cannot rotate about multiple axes*, the constrained ball and socket joint could meet the claim limitation which requires the hinge member being rotatably attached to the camera in a single axis of rotation. Since one could reasonably argue Defendants' products meet the "rotatably attached" limitation, AdjustaCam's infringement theories are not objectively baseless.

A0006. The problem is that the above-emphasized portion—the premise and *sine qua non* of the district court's conclusion—is not true and does not even reflect AdjustaCam's position. It is undisputed that the Accused Ball-and-Socket

Products included cameras that were in fact capable of rotating about multiple axes with respect to the socket—they could be both twisted and tilted up and down.

AdjustaCam never argued that the constrained ball-and-socket joints were incapable of rotating about multiple axes—it merely posited that the different rotations were "separate."  A0482-83 ("[I]f I rotate it around to the center, there is nothing that forces it to move, to tilt or to sway to either side."); A0484 ("There is two axes, but they are separate."); A0485-87 ("This happens to be a constrained ball and socket joint.  So it can [1] spin about the axis, it can [2] move forward, it may be able to [3] move to the side.").

On this record, there is no question that the cameras of the Accused Ball-and-Socket Products were capable of rotating in at least two different and distinct directions with respect to the sockets, not merely rotating about the claimed and singular "first axis of rotation."   '343 Patent, Claim 1 ("*said camera*, when the hinge member is so attached, *rotating, about a first axis of rotation*, relative to said hinge member").  It was objectively baseless for AdjustaCam to contend that such cameras were "limited to a *single* axis of rotation."  A0022-23.  One could not reasonably argue otherwise.

Importantly, AdjustaCam was not advancing a theory of infringement under the doctrine of equivalents, and so its case hinged on proof of literal infringement.

*See, e.g.,* A0996-97 and A1160-61 (AdjustaCam's expert report presenting only direct, literal infringement theory).

Long before the district court's *Markman* Order formally doomed AdjustaCam's case, the plain language of the claims, and especially in light of the specification, made clear that the Accused Ball-and-Socket Products could not possibly infringe. A0022 ("The claims plainly describe each 'rotatably attached' object as rotating about a single axis."); A0021 ("Every reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a single axis of rotation."). From the outset of this lawsuit, no reasonable plaintiff could have expected to succeed in proving infringement.

The situation would be somewhat different if AdjustaCam honestly did not know that infringement was impossible to prove at the outset of the case, but later discovered that it could not prevail. Here, such ignorance is implausible given the readily apparent functionality of the accused products and the simplicity of the patent and its claims. But even if AdjustaCam could legitimately plead ignorance, ignorance is no excuse to continue undeterred—for nearly five months, which included considerable and expensive expert discovery—after the district court's decisive *Markman* ruling in Newegg's favor. A0013-27 (April 10, 2012 *Markman* Order); A2141 (August 27, 2012 motion to dismiss Newegg). Here, as in *MarcTec*, AdjustaCam "not only initiated a frivolous lawsuit, it persisted in

46

advancing unfounded arguments that unnecessarily extended this litigation and caused [defendant] to incur needleless litigation expenses. This vexatious conduct is, by definition, litigation misconduct, and provides a separate and independent basis supporting the district court's determination that this case is exceptional." *MarcTec, LLC v. Johnson & Johnson,* 664 F.3d at 920-21 (Fed. Cir. 2012).

    C.    <u>AdjustaCam's Validity Positions Were Frivolous</u>

As explained above, AdjustaCam advanced the following frivolous argument in response to the clear anticipation of its claims by Irifune: "With Irifune, the camera is not even attached to the hinge member until fully tightened down using camera attachment shaft (9) and camera attachment screws (10 and (11)." A1263.  Using the exceedingly narrow definition of "attached" offered in the reexamination, AdjustaCam's expert Dr. Muskivitch opined that, "[o]nce the camera is attached to the fixed part 2, the camera cannot rotate about a first axis relative to the hinge member." *Id.*

These concocted arguments were objectively baseless for several reasons. First, AdjustaCam's illogical attempt to narrow the meaning of "rotatably attached" contradicts the claim language and the specification of the '343 Patent. If the camera disclosed in the '343 Patent was "permanently fixed to," or had to be fully tightened down to the hinge member, then the camera could not rotate about the first axis of rotation as the claims and specification require.  Indeed, such

arguments contradict AdjustaCam's own proposed construction of "rotatably attached" in this litigation ("connected such that the connected object is capable of being rotated").  A2813-14.  The Irifune camera is certainly "capable of being rotated"—e.g., when it is partially unscrewed from the threaded camera attachment shaft on the hinge.  AdjustaCam's argument that a camera is not rotatably attached to a hinge member unless it is "permanently fixed to" or fully tightened down to the hinge member also contradicts the district court's *Markman* Order because such a camera would not be capable of rotation about any axis.  A0021 ("Every reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.").  AdjustaCam could not reasonably expect to prevail against Newegg's invalidity arguments based on Irifune.

> D.   The District Court's Actions Cumulatively Reveal Its Abuse
>      Of Discretion

District courts cannot look the other way when there is clear evidence of bad faith litigation misconduct.  Here, the district court appears to have done just that, and thereby abused its discretion.  This is evident by several rulings—and absence of rulings—in the waning months of the case after AdjustaCam abandoned its unsustainable patent infringement case.

First, there is no doubt that patent litigation is expensive, and the courts have set up a system whereby prevailing parties may recover their costs.  In this case,

not only did Newegg prevail when AdjustaCam gave up in the litigation, but Newegg also got AdjustaCam to not oppose its application for $8,492.66 in costs. Despite the unopposed nature of Newegg's bill of costs, the district court did not award them, instead and without explanation providing that each party is to bear its own costs. A0199-200, A0001-03.

Second, Newegg gave the district court the opportunity to correct this error in awarding costs, immediately moving to correct the erroneous judgment. But the district court sat on Newegg's motion for six months, not ruling on it even though the failure to give Newegg its costs was plainly in error and easily fixable as a clerical matter. This had the effect of causing this Court to deactivate the appeal of the denial of attorneys' fees, and after an extensive delay, Newegg was forced to withdraw its motion to avoid further delay of this appeal.

Third, as explained herein, the district court refused to grant attorneys' fees under 35 U.S.C. § 285, ignoring that AdjustaCam's claim construction position was never reasonable, ignoring that AdjustaCam's post-claim construction infringement position was egregious, and ignoring the length of time that AdjustaCam pursued its case without any valid basis.

Finally, the district court abused its discretion by refusing to award to Newegg its expert fees, under its inherent authority, despite the fact that Newegg had to spend significant amounts on expert fees solely because AdjustaCam sought

to promulgate a frivolous infringement position—a position resting solely on the testimony of an expert who ignored the Court's claim construction and the realities of the accused products, thus forcing Newegg to counter with its own experts.

Patent litigation is expensive, and the cumulative effect of the district court's decisions (or lack thereof) was to force Newegg to spend money on patent litigation it could have been spending on its customers or employees. This Court has the power to explain that when a party consistently pushes unsupportable positions, it should have to pay attorneys' fees. *See* I.A.-I.C., *supra*. But this Court also has the power to set forth that when a district court fails to provide appropriate relief in a series of rulings or lack of rulings, that is an abuse of discretion that must be rectified. *See Seismograph Svc. Corp. v. Offshore Ray-Dist, Inc.*, 263 F.2d 5, 24 (5th Cir. 1958) (finding an abuse of discretion in failing to award attorneys' fees under Section 285 where the district court was "too charitable to Seismograph in not so holding" that the litigation was "so vexatious and unjustified as to constitute an 'exceptional case'"). Even if none of the district court's individual actions is enough to trigger the abuse of discretion alarm, certainly the cumulative effect of the district court's actions requires this Court to intervene and award to Newegg its fees, costs, and expert costs. It is vital to the judicial system that there be some meaningful and predictable boundaries for permissible litigation behavior, and the rules proffered by Newegg in this case help

promote impartiality in fee cases, which instills confidence in the public that everyone will be treated fairly and made whole when the system has been abused.

## II. ADJUSTACAM'S APPEAL MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Consistent with AdjustaCam's bad faith overreaching and indifference to the merits of this litigation, AdjustaCam brought its own affirmative appeal to this Court where subject matter jurisdiction is indisputably lacking. There is no legal support whatsoever for AdjustaCam's attempt to appeal a claim construction issue that it lost in the district court, made no effort to preserve for appeal, and expressly extinguished when it dismissed its case against Newegg with prejudice. This frivolous appeal only compounds the exceptionality of this case and causes Newegg to incur further needless legal expenses.

An "actual controversy must be extant at all stages of review, not merely at the time the complaint was filed." *Benitec Austl, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case, and no amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010).

AdjustaCam filed its notice of appeal seeking review of the district court's claim construction rulings.  A0193.  But by that time, Newegg had already been dismissed with prejudice from the case and given a covenant not to be sued in the future for infringement of the '343 Patent.  A2136-37; A1986-87; A0155.  The dismissal and covenant extinguished any ongoing disputes between AdjustaCam and Newegg concerning the infringement and validity of the '343 Patent.  Indeed, when dismissing Newegg, AdjustaCam even argued that its covenant divested the district court of subject matter jurisdiction over Newegg's declaratory judgment counterclaims, citing *Dow Jones*, 606 F.3d at 1348 and *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995).  A2136-37.  If there is no jurisdiction over Newegg's non-infringement and invalidity counterclaims due to a lack of an ongoing controversy, certainly there can be no jurisdiction over AdjustaCam's underlying infringement claims that were dismissed with prejudice.

This Court has often recognized its inability to reach claim construction issues that are not subject to an ongoing case or controversy. *See, e.g, SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1354 (Fed. Cir. 2012) ("[W]here, as here, a party's claim construction arguments do not affect the final judgment entered by the court, they are not reviewable. . . . Without a final judgment as to the infringement or validity of these claims, the court's claim constructions that impact only these withdrawn claims are not properly before us."); *Jang v. Boston*

*Sci. Corp.,* 532 F.3d 1330, 1336 (Fed. Cir. 2008) (resolving claim construction issues "that do not actually affect the infringement controversy between the parties" would result in impermissible advisory opinion because "[t]he Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties"); *see also NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1311 (Fed. Cir. 2005).

Although AdjustaCam purports to appeal from the district court's final judgment, because that final judgment was in no way based on the claim construction ruling, but was instead based entirely on the unopposed decision by AdjustaCam to affirmatively end the case, this Court lacks subject matter jurisdiction to review the claim constructions.

This is not a case where the parties consented to a judgment of non-infringement based on the claim constructions to allow for appeal of the construction. *See, e.g., SanDisk*, 695 F.3d at 1353 ("SanDisk voluntarily withdrew the '893 and '808 patents and claims 1 and 10 of the '842 patent from this action, and it does not dispute that the district court never entered a stipulated judgment of non-infringement with respect to these claims. Thus, these claims do not present a current infringement controversy before this court."). Here, AdjustaCam made no effort whatsoever to preserve any challenges to the district court's claim

53

constructions when it decided to dismiss its case against Newegg. Even in defending AdjustaCam's litigation positions and opposing Newegg's motion for attorneys' fees and expert fees, AdjustaCam noted no disagreement with the district court's claim constructions. A1191-94; A1194 (arguing that "AdjustaCam's infringement positions are entirely consistent with the Court's construction").

This Court cannot hear AdjustaCam's appeal because it lacks subject matter jurisdiction over the challenges raised to the claim construction rulings by the district court. AdjustaCam's appeal must be dismissed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, this case should be declared exceptional and egregious, and the case should be remanded to the district court to order payment by AdjustaCam of the attorneys' fees and expert fees owed to Newegg.

Additionally, AdjustaCam's appeal should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

Dated:  September 25, 2014

By: /s/ Kent. E. Baldauf, Jr.
Kent E. Baldauf, Jr.
Daniel H. Brean
Anthony W. Brooks
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd.
Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 471-8815

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

Richard G. Frenkel
LATHAM & WATKINS
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

Yar R. Chaikovsky
McDERMOTT, WILL & EMERY
275 Middlefield Rd., Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7447

*Counsel for Defendants-Cross-Appellants Newegg, Inc. Newegg.com, Inc., and Rosewill, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 25, 2014, copies of the foregoing Brief

of Defendant-Cross-Appellant was served on counsel for Plaintiff-Appellant

AdjustaCam, LLC and counsel for Defendant-Cross-Appellant Sakar International,

Inc. via the Court's ECF system and via electronic mail upon the following:

> John J. Edmonds (jedmonds@cepiplaw.com)
> Shea Neal Palavan (spalavan@cepiplaw.com)
> Stephen F. Schlather (sschlather@cepiplaw.com)
> COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER PLLC
> 1616 South Voss Road
> Houston, TX 77057
>
> Ezra Sutton, Attorney (esutton@ezrasutton.com)
> EZRA SUTTON, P.A.
> Suite 201
> 900 Route 9
> Woodbridge, NJ 07095

/s/ Kent E. Baldauf, Jr.
*Counsel for Defendants-Cross-Appellants*
*Newegg, Inc. Newegg.com, Inc., and*
*Rosewill, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Jurisdictional Statement on page 1, and ending with the last line of the conclusion on page 54, including headings, footnotes, and quotations, is written in Times New Roman, size 14-point font, and contains 11,879 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

/s/ Kent. E. Baldauf, Jr.
*Counsel for Defendants-Cross-Appellants*
*Newegg, Inc. Newegg.com, Inc., and*
*Rosewill, Inc.*

57