2013-1665, -1666, -1667

# United States Court of Appeals
# for the Federal Circuit

ADJUSTACAM, LLC,
*Plaintiff-Appellant*,

v.

NEWEGG, INC., NEWEGG.COM, INC. and ROSEWILL, INC.,
*Defendants-Cross-Appellants*,

and

SAKAR INTERNATIONAL, INC.,
*Defendant-Cross-Appellant*,

*Appeals from the United States District Court for the Eastern District of Texas in case no. 10-CV-00329, Chief Judge Leonard Davis*

## CORRECTED NON-CONFIDENTIAL RESPONSE AND REPLY BRIEF OF PLAINTIFF-APPELLANT ADJUSTACAM LLC TO THE PRINCIPAL AND RESPONSE BRIEFS OF CROSS-APPELLANTS NEWEGG, INC., NEWEGG.COM, INC., ROSEWILL, INC., AND SAKAR INTERNATIONAL, INC.

Date: December 11, 2014

*/s/ John J. Edmonds*
John J. Edmonds
Stephen F. Schlather
Shea N. Palavan
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057

ATTORNEYS FOR PLAINTIFF-APPELLANT ADJUSTACAM, LLC

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, undersigned counsel for Plaintiff-Appellant hereby certifies that:

1.     The full names of every party or amicus represented by me is:

Adjustacam, LLC

2.     The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Plaintiff-Appellant's ultimate parent is Acacia Research Corporation, a publicly traded company.

4.     The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

John Edmonds, Stephen Schlather, Michael Collins, Andrew Tower, Eric Robinson, Johnathan Yazdani, and Shea Palavan of COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC.
Andrew Spangler and James Fussell of SPANGLER LAW PC.
Louis Charles Van Cleef of L. CHARLES VAN CLEEF, ATTORNEY LAW.

Dated: December 11, 2014                    */s/ John J. Edmonds*
                                            John J. Edmonds

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ ii

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES .............................................................. vi
Cases ..................................................................................... vi

Statutes ................................................................................ vii

Rules .................................................................................... vii

I.     STATEMENT OF JURISDICTION.............................................1

II.    STATEMENT OF THE ISSUES...................................................1

III.   STANDARD OF REVIEW............................................................2

IV.    STATEMENT OF THE CASE ......................................................2

V.     STATEMENT OF THE FACTS ....................................................7
       A.   The '343 Patent. ...........................................................7

       B.   The '343 Claims as Construed by the Magistrate Judge/District Court .......8

       C.   Due to the District Court's construction of "rotatably attached," Adjustacam Dropped Sixteen (16) Webcams from the Suit..................................................10

       D.   The dismissal of Newegg was for good-faith, prudent, and practical reasons. ..........................................................................10

       THE     MATERIAL     OMITTED     DISCLOSES     MATERIAL     DEEMED
       CONFIDENTIAL UNDER LICENSE............................................11

       E.   The dismissal of Sakar was for good-faith, prudent and necessary reasons because the Asserted Claims had been Canceled in Reexamination, and Because an Appeal of the Cancellations Would Delay Issuance of New and Amended Claims, and also Likely Exhuaust Most of the Remaining Term of the Patent. 12

F.    Adjustacam's infringement claims against Newegg/Sakar were reasonable and meritorious. ...............................................................................14

G.    Adjustacam did not extort nuisance value settlements from anyone, especially Newegg/Sakar. ..................................................................21

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................22

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................22

VI.   LEGAL PRINCIPLES ....................................................................24

VII.      SUMMARY OF THE ARGUMENT ..........................................26

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................22

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................22

VIII.   ARGUMENT ................................................................................29
A.    Adjustacam did not extract nuisance settlements from any defendants. Adjustacam's settlements were directly related to each Defendants' number of infringing units and an established royalty. ......................................29

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................30

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................22

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE ...............................................34

B.    Newegg's complaints about its settlement negotiations with Adjustacam are naïve and misguided. ..........................................................................34

C.    Adjustacam's infringement claims were reasonable and meritorious, and were certainly not brought in bad faith, nor were they objectively baseless......37

D.    Newegg's new argument that its webcams lack a hinge member was not included in its Section 285 Motion filed with the District Court, and thus it is waived.  Further, Newegg's new argument lacks factual merit. ........................39

E.    Adjustacam's validity arguments were reasonable and meritorious...........41

F.    Adjustacam did not "fabricate" a per-unit royalty to "justify nuisance value settlements."...........................................................................................................46

THE   MATERIAL   OMITTED   DISCLOSES   MATERIAL   DEEMED CONFIDENTIAL UNDER LICENSE.............................................................46

G.    There has been no bad faith or litigation misconduct by Adjustacam.........47

H.    Newegg's Complaints About its Separate Motion for Costs, which was Not included in this Appeal, are Irrelevant and Mistaken.........................................48

I.    Newegg's "cumulative" argument is a baseless and desperate attempt to lump together three meritless arguments into a "cumulative" basis for finding an abuse of discretion that simply did not occur. ....................................................50

J.    The District Court did Not Commit Clear Error, Nor did it Abuse its Discretion, in Denying Newegg/Sakar's Motions. ...........................................52

K.    This Court has subject matter jurisdiction over Adjustacam's appeal........57

IX.    CONCLUSION AND PRAYER...................................................................62

X.    CERTIFICATE OF SERVICE....................................................................64

XI.    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ........65

## TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
738 F.3d 1350, 1353 (Fed. Cir. 2010) ............................................60

*Anderson v. Aon Corp.*,
614 F.3d 361 (7th Cir. 2010) (Easterbrook, J.)...............................58

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*,
383 F.3d 1378 (Fed. Cir. 2005) ............................................ 5, 24, 51

*Chafin v. Chafin*,
133 S.Ct. 1017, 1023 (2013)............................................61

*Chamberlain Group, Inc., v. Skylink Technologies, Inc.*,
381 F.3d 1178 (Aug. 31, 2004)............................................ 57, 58, 60

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ............................................6

*Crowe v. Smith*,
151 F.3d 217 (5th Cir. 1998) ............................................55

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
559 F.3d 1308 (Fed. Cir. 2009) ............................................58

*Digitech Image Technologies, LLC v. Newegg, Inc.*,
2013 WL 5604283, No. 8:12-CV-01688-ODW, Doc No. 473 (C.D.Cal., Oct. 11, 2013) ............................................4

*E.Digital Corp. v. Creative Labs, et al.*,
Civ. A. No. 12-cv-2879-DMS, Dkt. No. 46 (S.D. Cal. October 1, 2013)...........4

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280, 291 n.7 (2005)............................................59

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981)............................................58

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ............................................ 6, 33, 38, 39

*Highmark Inc. v. Allcare Health Management Systems, Inc.*,
134 S.Ct. 1744, 188 L.Ed.2d 829 (2014)............................................ 2, 24, 51

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*,
540 F.3d 1337, 1343 (Fed. Cir. 2008) ............................................61

*Jang v. Boston Sci. Corp.*,
532 F.3d 1330, 1336 (Fed.Cir.2008) ............................................60

*Johnson v. Zerbst*,
304 U.S. 458 (1938)............................................59

*Key Pharms. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed.Cir.1998) ............................................6

*Macrosolve, Inc. v. Antenna Software, Inc., et al.,*
   No. 6:11-cv-00287-MHS-KNM, Doc 573 (E.D. Tex Oct. 16, 2014) .................4
*MarcTec, LLC v. Johnson & Johnson,*
   664 F.3d 907 (Fed.Cir.2012) ...................................................... 2, 33
*Nelson v. K2 Inc.,*
   No. 2:07-cv-1660-RSL, ECF 77, p. 3 (W.D.Wa. April 27, 2009) ....................20
*Octane Fitness, LLC v ICON Health & Fitness, Inc.,*
   134 S.Ct. 1749 (2014)........................................................ 24, 25, 52
*Pacheco v. Mineta,*
   448 F.3d 783 (5th Cir. 2006) ...............................................................48
*Pandrol USA, LP. v. Airboss Ry. Prods., Inc.,*
   320 F.3d 1354 (Fed. Cir. 2003) ..........................................................58
*Salley v. E.I. DuPont de Nemours & Co.,*
   966 F.2d 1011 (5th Cir. 1992) .............................................................48
*SanDisk Corp. v. Kingston Technology Co., Inc.,*
   695 F.3d 1348, 1353 (Fed. Cir. 2012) ...............................................60
*SFA Systems, LLC v. 1-800-Flowers.com, Inc., et al;*
   6:09-cv-340, Doc. No. 77 (July 8, 2014).............................................20
*Singleton v. Wulff,*
   428 U.S. 106 (1976)..............................................................................38
*Stragent, LLC v. Intel Corp.,*
   No. 6:11-cv-00421-TBD-JDL, Doc. No. 364, p. 5 (E.D. Tex., Aug. 6, 2014) ..25
*Super Sack Corp. v. Chase Packaging Corp.,*
   57 F.3d 1054 (Fed. Cir. 1995) ..................................................... 12, 36, 59
*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
   549 F.3d 1381 (Fed. Cir. 2008) (Bryson, J., concurring) ...................55
*United States v. Clark,*
   445 U.S. 23 (1980)................................................................................58
*VirnetX, Inc. v. Cisco Systems, Inc.,*
   767 F.3d 1308 (Fed. Cir. 2014) ........................................................34

## Statutes
28 U.S.C. § 1295............................................................................................58

## Rules
Federal Rule of Civil Procedure 59 ...........................................................59

## I.  STATEMENT OF JURISDICTION

Plaintiff-Appellant, Adjustacam LLC ("Adjustacam"), does not dispute this Court's jurisdiction over the Cross-Appeal of Newegg, Inc., Newegg.com, Inc., and Rosewill, Inc. ("Newegg") and Sakar International, Inc. ("Sakar") (collectively "Newegg/Sakar").  Newegg/Sakar's erroneous contention that this Court lacks jurisdiction over Adjustacam's appeal is addressed below.

## II.  STATEMENT OF THE ISSUES

1.  Whether this Court should substitute its judgment for the discretion of the District Court that denied Newegg/Sakar's Section 285 motions.

2.  To the extent that Newegg/Sakar might have arguably asserted "clear error" by the District Court in their Principal Briefs, which is not apparent and therefore denied, whether the District Court clearly erred in its factual findings.

3.  Whether the District Court abused its discretion in finding that Adjustacam's claims were not objectively baseless or brought in subjective bad faith, and that Adjustacam did not commit litigation misconduct.  Alternatively, to the extent that this Court would apply the *Octane* standard even where the issue is not before the Court when Newegg/Sakar did not urge that standard in the District Court and when Newegg/Sakar have not requested remand for reconsideration by the District Court under *Octane*, whether the District Court abused its disrection under the *Octane* standard when it denied Newegg/Sakar's Section 285 motions.

### III.    STANDARD OF REVIEW

The denial of a motion for fees under Section 285 and the decision not to award fees under the District Court's inherent authority are reviewed for abuse of discretion. *See Highmark Inc. v. Allcare Health Management Systems, Inc.,* 134 S.Ct. 1744, 188 L.Ed.2d 829 (2014) (fees under 285); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed.Cir.2012) (expert fees).  Further, factual findings are reviewed under a "clearly erroneous" standard. *Highmark,* 134 S.Ct. 1748, n. 2.

### IV.    STATEMENT OF THE CASE

This was a patent infringement suit involving U.S. Patent No. 5,855,343 (the "'343 patent").  Newegg is primarily an online retailer of electronics, including infringing webcams manufactured by others, but it also markets and sells a modest number of infringing house-branded "Rosewill" webcams.  As the case progressed, Newegg was the beneficiary of multiple settlements by webcam manufacturers such as HP and Gearhead, which licensed most of the infringing sales that Newegg had made.  Once Newegg's infringement liability was reduced to just the relatively small sales of its own Rosewill webcams, Adjustacam voluntarily dismissed Newegg[1] from this case for strategic reasons, including streamlining the case to focus on the

---

[1] Once the last major national manufacturers HP and Gearhead had taken licenses, Adjustacam agreeably dismissed the remaining retailers in the case: Best Buy, Fry's, Micro Center, Office Depot, and Wal-Mart. Newegg was the only retailer who declined to gracefully accept the benefit of its suppliers being licensed out. (*See, e.g.*, A2136).

larger remaining defendant, Sakar.

Sakar purports to be the manufacturer of "Kodak" branded webcams, which are sold through retailers such as Fry's and Kohl's; however, it appears that Sakar is merely a "wholesaler" that places the Kodak brand on webcams manufactured by others overseas. Sakar's Brief at p. 7.   As the case progressed, Sakar was the beneficiary of reexamination proceedings instituted by an anonomyous petitioner which resulted in cancellation of all Asserted Claims of the '343 patent.   While Adjustacam disputed the USPTO's cancellation of the Asserted Claims, it did not appeal the cancelation so that multple new and amended claims could issue with a reexamination certificate.   Because all Asserted Claims had been canceled, Adjustacam took the prudent and necessary step of dismissing Sakar from the lawsuit.   Sakar refused to be dismissed without a covenant not to sue. Therefore, Adjustacam took the additonal step of providing a covenant not to sue, which ultimately divested the District Court of jurisdiction and mandated dismissal.

Newegg continues its course of over-aggressively pursuing meritless motions for fees under Section 285 in virtually every case in which it prevails.[2] No court has yet granted one of Newegg's overreaching Section 285 motions (including under the new *Octane* standard).[3]

---

[2] Sakar essentially rode Newegg's coattails for most of the lawsuit and continues to do so on appeal.

[3] *See Macrosolve, Inc. v. Antenna Software, Inc., et al.,* No. 6:11-cv-00287-MHS-

The District Court issued a detailed, well reasoned written opinion rejecting all of Newegg/Sakar's groundless allegations for an exceptional case finding. The District Court's factual findings include (1) that "the constrained ball and socket joint could meet the claim limitation which requires the hinge member being rotatably attached to the camera along a single axis of rotation," (A0006); (2) that "one could reasonably argue that Defendants' products meet the 'rotatably attached' limitation" (A0006); (3) that "Adjustacam's infringement theories are not objectively baseless" (A0006); (4) that "there is insufficient evidence that the action was brought in bad faith and for an improper purpose (A0006); (5) that Adjustacam's settlements did not lead to the conclusion that Adjustacam acted in bad faith, (A0006 – A0007); (6) that "Adjustacam noted that its damages model for many of the defendants was small … [t]herefore, other defendants in this action would have necessarily settled for small amounts," (A0007); (7) Adjustacam did not engage in litigation misconduct or otherwise act inappropriately (A0007); (8) that "Defendants have failed to demonstrate that Adjustacam's validity arguments were baseless," (A0008); and (9) that "[w]hile Defendants may disagree with Adjustacam's

---

KNM, Doc 573 (E.D. Tex Oct. 16, 2014); *Pragmatus Telecom v. Newegg*, No. 12-1533-RGA (D. Del. July 25, 2014); *SFA Systems v. 1-800-Flowers.com, et al.*, No. 6:09-cv340 (E.D. Tex. July 7, 2014); *Digitech Image Technologies, LLC v. Newegg, Inc.*, 2013 WL 5604283, No. 8:12-CV-01688-ODW, Doc No. 473 (C.D.Cal., Oct. 11, 2013); *E.Digital Corp. v. Creative Labs, et al.*, Civ. A. No. 12-cv-2879-DMS, Dkt. No. 46 (S.D. Cal. October 1, 2013).

methodology of calculating damages, there is no evidence this theory was so outrageous and unreliable to support an award of attorney fees." (A0009). All of the District Court's factual determinations weigh against any impropriety by Adjustacam and against any exceptionality for this case.

The District Court decided Newegg/Sakar's motions based upon the *Brooks Furniture* standard applicable at the time. *See Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,* 383 F.3d 1378 (Fed. Cir. 2005). Newegg/Sakar argued their Section 285 motions under the *Brooks Furniture* standard. (A1776).

The District Court's factual findings constituted a wholesale rejection of Newegg/Sakar's baseless arguments and make it clear that the District Court would deny Newegg/Sakar's motions under *Octane* as well. Not surprisingly, Newegg/Sakar improperly seek to have this Court substitute its judgment for the discretion of the District Court, and to reweigh all the facts that that the District Court considered and weighed against Newegg/Sakar under a standard never before the District Court.

Moreover, Newegg/Sakar are ambiguous about whether they are seeking appellate review under the *Brooks Furniture* or the *Octane* standard. To the extent that Newegg/Sakar are actually relying upon the lower standard under *Octane,* Newegg/Sakar have waived application of the *Octane* standard at least because they (1) argued under the *Brooks Manufacturing* standard in the District Court, (2) have

not sought a remand to the District for reconsideration under *Octane*, and (3) are merely arguing in their briefs that the District Court necessarily erred under *Octane* because it allegedly erred under *Brooks Furniture*, without *Octane* even having been brought before the District Court. "Ordinarily, doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated at the trial." *See e.g., Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed.Cir.1998); *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008). Moreover, waiver is not limited to questions of fact. *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006).

This Court should not apply apply the *Octane* standard in reviewing the District Court's ruling under such circumstances. However, whether this Court reviews the District Court's ruling under *Brooks Furniture* or under *Octane* (which would be erroneous), the conclusion should be the same – the District Court did not abuse its decretion in denying Newegg/Sakar's motions and there was no clear error in the District Court's wholesale rejection of Newegg/Sakar's baseless spin on the facts. The District Court's findings noted above, including that Adjustacam's infringement and validity positions were not meritless and that Adjustacam committed no litigation misconduct, are ample reason to affirm the District Court's ruling under *Brooks Furniture*, as should be done, or under *Octane*, if this Court deems *Octane* applicable and not waived.

## V.    STATEMENT OF THE FACTS

### A. The '343 Patent.

The '343 patent generally relates to a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (*e.g.*, a table top), and another disposition on an inclined object (*e.g.*, the elevated screen of a laptop computer). Exemplary Fig. 2 below from the '343 patent shows a preferred embodiment of a webcam in a first disposition on a table top, and exemplary Fig. 4 below shows the same webcam in a second disposition when attached to the laptop screen, as follows:



(A0165).

The claims of the '343 patent asserted in the lawsuit were independent claims 1 and 19 and dependent claims 7 and 8.   Exemplary claim 1 covers an apparatus comprising a hinge member rotatably attached to a camera, a support frame rotatably

attached to the hinge member, the support frame having a first disposition on a surface and a second disposition on an inclined object. A0169-A0170.  Claim1 and its dependent claims (*e.g.*, 7 and 8) each comprise a "support frame rotatably attached to said hinge member ...," and similar independent claim 19 comprises a "support frame hingedly attached to said hinge member." (A0169-A0171)

## B. The '343 Claims as Construed by the Magistrate Judge/District Court

Newegg/Sakar's arguments for exceptionality largely focus on the "rotatably attached" element in claims 1 and 19. On April 10, 2012, the Magistrate Judge issued a Memorandum Opinion and Order (A0013).  In its *Markman* Order, the Magistrate Judge rejected both sides' proposed construction of "rotatably attached," and found that, "[w]hile the Court has not explicitly construed the 'rotatably attached' terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, 'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." *Id.* at 10.

The Magistrate Judge construed "hinge member" as "a structural element that joins to another for construction." A0017-0019 & A0027.  The District Court also adopted this construction. A0012. The '343 patent teaches and claims that a "hinge member" comprises a structural element comprising rotation about a first axis relative to a camera and rotation about a second axis relative to a support frame. A0164. Regarding the first axis of rotation, the '343 patent teaches that, in a

preferred embodiment, "[h]inge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16." A0164, 4:17-19.[4] *See also* A0164 2:12-14; 3:36-40, & 5:38-41. Further, independent claim 1 comprises: "said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member," and the independent claims each comprise: "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member."

Regarding the second axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18." A0164, 4:22-24. *See also* A0164, 2:14-18; 3:40-43, & 5:41-44. Claim 1 comprises: "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object." A0169-A0170. Claims 10, 20, and 21 comprise: "said hinge member rotating about a second axis of rotation relative to said support frame." A0170-A0171. Claim 19 comprises: "said hinge member rotating over a second axis of rotation relative to said support frame." A0171.

The preferred embodiment's rotatable attachment between the hinge member and the camera depicted in Figs. 2, 3, and 4 is a pivot joint, not a hinge joint. The

---

[4] Note that "4:17-19" is shorthand for column 4, lns. 17-19 of the '343 patent.

Magistrate Judge that construed the claims acknowledged that a rotatable attachment is broader than a hinge joint. (A0013). A few well known examples of rotatable attachments are pivot joints, ball and socket joints, and saddle joints. A2813.

## C. Due to the District Court's construction of "rotatably attached," Adjustacam Dropped Sixteen (16) Webcams from the Suit.

Due to the Court's construction of "rotatably attached," Adjustacam dropped sixteen (16) webcams from the suit because the rotatable attachment between the hinge member and camera was not limited to a single axis of rotation.[5] (A0341). This shows that Adjustacam acted reasonably and in conformance with the District Court's claim construction ruling. Newegg/Sakar have not argued that Adjustacam acted improperly by initially including these sixteen webcams in the suit.

## D. The dismissal of Newegg was for good-faith, prudent, and practical reasons.

Adjustacam originally accused Newegg of infringement relative to various webcams sold by Newegg but manufactured by Auditek, Creative, Digital Innovations, Gearhead, Hercules, HP, iMicro, Lifeworks, jWin, Pixxo, and Rosewill. A0343. However, during the course of the lawsuit, most of Newegg's suppliers reached settlements with Adjustacam which licensed the sale of their webcams by

---

[5] The dropped webcams were the HP 3100, Gearhead WC 740, Gearhead WC 745, Gearhead WC 750, Gearhead WC 740I, Gearhead WC 1100, Gearhead WC 1200, Gearhead WC 1300, Gearhead WC 1400, Gearhead WC 1500, Gearhead WCF 2600, Gearhead WCF 2750, Gearhead WC 4750 and Gearhead WC 8301. A0341.

Newegg.  A0343[6]  Finally, on August 10, 2012, Adjustacam settled with Newegg's supplier GearHead, and on August 17th, Adjustacam settled with Newegg's supplier HP. A0343.

   With the HP and GearHead licenses, Adjustacam's claims against almost all of the remaining retailers in the case became essentially *de minimis*,[7] and the only significant remaining defendants were Sakar and its primary distributor, Kohl's. A0343. Sakar/Kohl's were also unique among the remaining defendants in that they failed to designate a damages expert, and thus had no expert to rebut Adjustacam's damages expert, Mr. Walt Bratic. A0343. Therefore, in view of the HP and GearHead settlements, and in an effort to streamline this case by winnowing out *de minimis* infringers, and to focus on Sakar/Kohl's (who lacked a damages expert), Adjustacam voluntarily dismissed its claims against the remaining retailers who had sold HP and/or GearHead webcams, namely Best Buy, Fry's, MicroCenter, Office Depot, and Walmart.  A0343.[8]

   With only Sakar and Newegg remaining, Newegg initially refused to be

---

[6] As of July 2012, Adjustacam had settled with Auditek, Creative, Digital Innovations, iMicro, Lifeworks, and jWin.

[7]**THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE**
                                                          However, that allegation is false and untrue.

[8] The dismissals of Best Buy, Fry's, MicroCenter, Office Depot, and Walmart are at C.A. 6:10-CV-00329, D.E. 668, 670, 666, 667 and 669, respectively.

voluntarily dismissed like the other defendants. A2136. Thus, Adjustacam was required to take the unusual measure of filing an *opposed* motion to dismiss Newegg pursuant to *Super Sack Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995). A2136. At the culmination of reexamination proceedings involving the '343 patent (see below), Newegg finally agreed to be dismissed on September 27, 2012. *See* A1986.[9]

### E. The dismissal of Sakar was for good-faith, prudent and necessary reasons because the Asserted Claims had been Canceled in Reexamination, and Because an Appeal of the Cancellations Would Delay Issuance of New and Amended Claims, and also Likely Exhuaust Most of the Remaining Term of the Patent.

On August 30, 2012, and at the culmination of reexamination proceedings involving the '343 patent, the USPTO issued a Final Office Action rejecting the Asserted Claims as being unpatentable. A258 and A0369-A373. However, the USPTO also held that multiple new and amended claims were patentable. A258 and A284.003. Although Adjustacam disagreed with the USPTO's determination of unpatentability, rather than pursue lengthy and expensive appellate proceedings, which might exhaust most of the remaining term[10] of the '343 patent, Adjustacam

---

[9] Upon cancelation of the claims in reexamination proceedings, Adjustacam promptly dismissed the final defendant, Sakar.

[10] The '343 patent expires on March 17, 2017, which is approximately fifty-two (52) months from the issuance of the reexamination certificate. A258, n. 4. The appellate process for reexaminations was, at least at the time, notoriously lengthy. For example, in FY 2012 the average pendency of an appeal in the Patent & Trademark Appeal Board (formerly known as the Board of Appeals & Patent Interferences) was

canceled the rejected claims so that a reexamination certificate could issue with the new and amended claims. A258; A284.003.

In view of the fact that the asserted claims of the patent-in-suit were canceled, Adjustacam, in good faith, promptly sought to dismiss Sakar from the case. Adjustacam granted a covenant not to sue to Sakar and moved to dismiss Sakar pursuant to the *Super Sack* case. A2136-A1968.   Sakar initially opposed being dismissed and, baselessly, sought to obtain an exceptional case finding by way of a jury verdict. A1867 & A1873-A1954.   However, Sakar ultimately agreed to be dismissed, with prejudice, because, due to the covenant not to sue and cancelation of the asserted claims, the claims in the lawsuit were moot. A318-A320.

Newegg/Sakar's allegation that Adjustacam never intended to pursue its case to trial is unsupported rhetoric.  The record shows that Adjustacam litigated the case for over two years and that the case proceeded through *Markman* proceedings, through expert reports and depositions, and all the way through the filing of a proposed pretrial order. A1873. Adjustacam only dismissed Sakar because the asserted claims of the '343 patent had been canceled during reexamination

---

thirty-six           (36)               months.          *See* http://www.uspto.gov/ip/boards/bpai/stats/perform/fy2012_perform.jsp; A258, n. 4. Further, appeals from the PTAB to the Federal Circuit took approximately 10 months from filing to disposition. *See* Chart entitled "Median Disposition Time for Cases       Decided       by       Merits       Panels"       at http://www.cafc.uscourts.gov/thecourt/statistics.html; A258, n. 4.

proceedings. Although Adjustacam disagreed with the USPTO's determination of unpatentability, rather than pursue lengthy and expensive appellate proceedings, which might exhaust most of the remaining term of the '343 patent, Adjustacam canceled the rejected claims so that a reexamination certificate could issue with new and amended claims.

### F. Adjustacam's infringement claims against Newegg/Sakar were reasonable and meritorious.

The District Court correctly found that Adjustacam's infringement positions had merit. *See* A0006-A0009 and findings detailed above. Further, as noted above, in an effort to streamline this case by winnowing out *de minimis* infringers, Adjustacam dismissed Newegg (and several other retailers) in view of manufacturer settlements culminating in the HP and GearHead[11] settlements to focus on Sakar/Kohl's (who lacked a damages expert). Further, as noted above, although Adjustacam disagreed with the USPTO's determination of unpatentability, rather than pursue lengthy and expensive appellate proceedings, which might exhaust most of the remaining term of the '343 patent, Adjustacam canceled the rejected claims so that a reexamination certificate could issue with new and amended claims. Once

---

[11] Adjustacam had a reasonable and legitimate basis to keep Newegg in the case as long as the manufacturers supplying Newegg were still in the case. Once the last of those manufacturers, HP and Gearhead, took licenses, Adjustacam had a reasonable and legitimate basis for dismissing Newegg's relatively *de minimis* infringement via the Rosewill house-branded webcams, in order to focus its efforts on Sakar.

the Asserted Claims had been canceled, Adjustacam's infringement claims based upon the Asserted Claims became moot. Newegg/Sakar's allegation that they was dismissed because Adjustacam's infringement case lacked merit is baseless and completely disparate to the totality of the circumstances.

Newegg/Sakar's allegations of non-infringement by their webcams lacks factual or technical merit. The only non-infringement argument raised by Newegg/Sakar in their Section 285 motions was the limitation in the two independent Asserted Claims (claims 1 and 19) that the "hinge member" is "adapted to be rotatably attached" to the camera. (A295-A298; A1785-1786). As noted above, in its *Markman* Order, the District Court construed "rotatably attached" as "rotating over a single axis." As Adjustacam's technical expert Dr. Muskivitch has explained in detail, Adjustacam's infringement positions are entirely consistent with the Court's construction. (A0475-A0477; A0482-A0487; A0487-A0488; A0491-A0492; A0495-A0496; A0518-A0520).

As the District Court correctly held, what Newegg/Sakar alleged is a ball and socket joint is actually a "constrained" or modified ball and socket joint. (A0006). It is a modified ball and socket joint because there is a channel that restricts movement, as noted by the following red arrows:





(A006; A0262; A284.129-A284.130; A285.133-A285.150; A0341; A0471-A0472;

A0475-A0492 A0495-A0496; A0518-A0520).  This restricted movement results in

two functionally independent joints which have ranges of movement independent of

each other.  (A284.153;  A284.157;  A0471-A0472;  A0475-A0488;  A0495-A0496;

A0518-A0520).[12]  One of these joints – the one which allows the camera to pan left

and right relative to its base – meets the claim limitation of the hinge member being

---

[12] An analogy which Adjustacam's technical expert Dr. Muskivitch explained in his
deposition, is that an elbow structurally has two functionally independent joints.
(A0518).   The twisting of one's forearm to rotate the wrist is functionally
independent from the hinged bending of the elbow. Id.

rotatably attached to the camera in a single axis of rotation. (A284.124; A284.126;

A284.132-A284.146; A284.153-284.54; A284.176-A284.178; A0466; A0468;

A0474-A0488; A0495-A0496; A0518-A0520).

Further, what Sakar alleges is a "ball and socket joint" is actually a modified

joint with a socket and no ball. A262; A284.004. It is modified because there is a

channel that restricts movement, as noted by the following red arrows:



A262; A284.004.

Not only was Adjustacam's infringement position entirely consistent with the

physical make-up of Newegg/Sakar's infringing products and a correct reading of

the District Court's *Markman* Order, and properly supported by Adjustacam's

technical expert, but it was also consistent with the preferred embodiment of the '343

patent. As can be seen, the preferred embodiment webcam has essentially the same

configurability and range of movement as either the Rosewill or the Hercules

webcams:

  

*Fig. 4*

or Sakar webcams:

  

*Fig. 4*

at issue.  A264.

Sakar's allegations of "admissions" by Adjustacam's technical expert Dr. Muskivitch are meritless and evidence a fundamental misunderstanding of the '343 patent as construed by the District Court. On the one hand, Sakar argues (meritlessly) that Kodak S101 and Kodak T130 webcams allow rotation around "multiple axes" at the hinge member. Sakar's Brief at p. 10. On the other hand, Sakar argues that these alleged "admissions" show that the same webcams do not rotate around any axis relative to the hinge member. Sakar's Brief at pp. 10-11.  Refuting such arguments, Adjustacam's Dr. Muskivitch explained that the webcams, via their stem appendage, rotate about a single axis of rotation around the hinge member.

(A284.153; A284.157; A284.159-A284.160; A284.165-A284.155; A284.166-A285.167; A284.169; A284.172-A284.173; A284.176; A284.323-A284.324; A284.331-A284.332; A1131-A1132; A1139-A1140). Moreover, the USPTO agrees that a camera can be rotatably attached to a hinge member via an appendage. As stated by the USPTO when it finally rejected the Asserted Claims in view of the Irifune publication, "Irifune shows a hinge (around shaft 1) which is rotatably attached to the camera using threaded camera attachment shaft 9." A284.039; A379. Camera attachment shaft 9 (although Adjustacam disagreed with the USPTO that it was rotatably attached to the hinge member because it had to be firmly screwed down to work), is analogous to the stem appended to the cameras of Kodak webcams at issue. Further, although the USPTO ultimately withdrew its objections based upon the Ma '783 patent for different reasons, the USPTO took the position that "support frame (3) [is] rotatably attached to the hinge member (via 2 and 21) about a second axis of rotation (2)." A284.373. The foregoing are illustrated by Figure 2 from Irifune and Figure 1 from Ma, as follows:



*See* A284.388, A284.396 (Irifune, Figs. 2,10) and A284.399 (Ma, Fig. 1). Notably, Sakar cites no expert support for its argument that Adjustacam's technical expert somehow "admitted" a non-infringement theory that Sakar contradicts in its own Brief.

Thus, Newegg/Sakar's allegations, which were properly rejected by the District Court, that their webcams do not meet the "rotatably attached" element (as construed by the District Court) lack merit. Adjustacam's infringement position thus (1) was correct from a technical perspective; (2) followed the District Court's construction; (3) was properly supported by reasoned analysis from Adjustacam's technical expert; and (4) accorded with the preferred embodiment.

Newegg/Sakar's allegation that they would have been vindicated by a verdict of non-infringement had Adjustacam not dropped its claims for practical and strategic reasons is unsubstantiated and nothing more than hope and speculation. The District Court properly rejected such assertions based on the facts. In any event, a claim for fees based upon the meritlessness of claims should be clear cut so as not to involve a mini-trial on the merits based upon an incomplete record. *See SFA Systems, LLC;* 6:09-cv-340, Doc. No. 77, pp. 4-5 (July 8, 2014); *Nelson v. K2 Inc.*, No. 2:07-cv-1660-RSL, ECF 77, p. 3 (W.D.Wa. April 27, 2009). Newegg/Sakar's attempts to drum up a non-infringement argument after they were fortuitously dismissed from the case is groundless, and the District Court appropriately rejected Newegg/Sakar's

assertions.

### G. Adjustacam did not extort nuisance value settlements from anyone, especially Newegg/Sakar.

The District Court correctly found that Newegg/Sakar's allegations of "extortion" via "nuisance value" settlements were groundless, including by its findings noted above.[13] *See* (A0006-A0009).

Newegg/Sakar's complaints about the number of defendants in this pre-AIA case is unfounded. "In many cases, patent infringement is widespread and the patent owner may be forced to revert to widespread litigation against several infringing parties to enforce its intellectual property rights." *SFA Systems,* No. 6:09-cv340, Dkt. No. 77.

Newegg/Sakar's allegation that Adjustacam has extorted nuisance value settlements is baseless hyperbole and speculation that was not persuasive to the District Court and should hold no weight in this Court. The amounts of Adjustacam's settlements with various defendants are directly related to its target royalty of $1.25 - $1.50 per webcam. This royalty rate was established many years before this suit and before Adjustacam even obtained rights in the '343 patent.

Adjustacam's damages expert Mr. Bratic issued an extensive, well-reasoned report opining that the reasonable royalty for infringement of the '343 patent is $1.25

---

[13] Adjustacam's settlement target royalty for the case of $1.25 - $1.50 per infringing webcam accorded with its damages expert's opinion on a reasonable royalty.

- $1.50 per webcam. (A0532) & (A0541). As discussed in the Bratic damages report, on October 22, 2001, Adjustacam's predecessor PAR Technologies entered into a Settlement and License Agreement with Philips. (A0542-A0543). This agreement called for running royalties on webcam sales as follows: 0 – 20,000 units: $1.00 / unit; 20,001 - 40,000: $2.00 / unit; 40,001 - 60,000: $6.00 / unit; and more than 60,000: $8.00 / unit. *Id*. Using the unit ranges of 0 - 20,000 ($1.00 / unit) and 20,001 - 40,000 ($2.00 / unit) as a conservative baseline, PAR was expected to receive an average royalty payment of approximately $1.50 per licensed product. (A0544).

Further, as detailed in the Bratic damages report, on December 31, 2001, PAR entered into a Settlement and License Agreement with **[CONF]** involving rights to the '343 Patent. *Id*.

### THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE

Newegg/Sakar complain that there is lack of written documentation of revenue representations made by defendants during settlement negotiations. However, the reality and the norm of patent litigation is that most settlement discussions are conducted verbally.

Adjustacam used this $1.25 - $1.50 per webcam royalty rate as a baseline for licensing the various defendants. (A0545-A0559); (A0658-A0662); (A0666). Specifically, Adjustacam entered into six (6) settlement and license agreements for

rights to the '343 Patent that included both a lump-sum payment relating to a certain number of units of webcams and also a running royalty rate for sales of webcams that exceed the units sold that were covered by the lump-sum payment. (A0545). The implied royalty rate related to the lump-sum payments was approximately $1.50 per unit for five license agreements and $1.25 per unit for one license agreement. *Id.* The running royalty rates for sales of units exceeding the volume included in the lump-sum payments for each of the six (6) licenses were $1.50 per unit. *Id.*

Further, Adjustacam entered into 14 settlement and license agreements for rights to the '343 Patent that included only a paid up, lump-sum payment. (A549). For these licenses Adjustacam also considered and negotiated using the benchmark of the same $1.25 to $1.50 per unit royalty rates its predecessor had obtained from the Philips and **[CONF]** licenses discussed above. *Id.*

Adjustacam's use of the $1.25 - $1.50 benchmark for its licensing negotiations with the various defendants was explained in detail in the deposition of Adjustacam's Rule 30(b)(6) designee and by Adjustacam's damages expert Mr. Bratic.  (A0545-A0559) & (A0689-A0696).  Further, Mr. Bratic's report explains in detail how the sums paid to Adjustacam in settlement tie directly to this $1.25 - $1.50 benchmark. (A0545-A0559).  The amounts of settlement agreements with Adjustacam are tied to the value of the patented technology, not to any "nuisance value."

Newegg/Sakar's implicit argument is that a case involving relatively small

settlements below the cost of litigation must necessarily have been based upon meritless claims. This argument is incorrect. The District Court properly rejected Newegg/Sakar's allegations that Adjustacam's case lacked merit. Adjustacam has every right to seek redress against infringers of its patent in court, even if the market for webcams is now relatively small and many of the remaining players have relatively modest sales. The District Court correctly concluded that "Adjustacam's damages model for many of the defendants was small … [t]herefore, other defendants in this action would have necessarily settled for small amounts … [and] there is no minimum damages requirement to bring such a case." (A0007).

Newegg/Sakar have made no argument or showing, in the District Court or in this Court, that Adjustacam's infringement theories against other settling defendants were unreasonable, baseless, or flawed in any manner. The only thing that Newegg/Sakar can point to with respect to other defendants is the size of their settlements, which is indicative of nothing more than the extent of their infringing sales in view of a target royalty based upon preexisting licenses.

## VI.     LEGAL PRINCIPLES

Under the prior *Brooks Furniture* standard, once it is determined that the party seeking fees is a prevailing party, determining whether to award attorneys' fees under 35 U.S.C. § 285 is a two-step process. *Highmark*, 687 F.3d at 1308 (citing *Brooks Furniture*). First, a prevailing party must establish by clear and convincing evidence

that the case is "exceptional." *Id.* "It is established law under section 285 that absent misconduct … sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. *Id.*

Recently, the *Octane* court, overruling *Brooks Furniture*, concluded that fees should be awarded under Section 285 only in "rare cases and in a discretionary manner, assessing various factors to determine whether a given case was sufficiently 'exceptional' to warrant a fee award" and considering "the totality of the circumstances." *Octane Fitness, LLC v ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1753-54 (2014). "[A]n 'exceptional' case," the court explained further, "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id. at 1756.* A number of general guidelines have been discerned by Judge Dyk from the *Octane* court's treatment of Section 285 that may assist this court in assessing whether an award of fees is proper in a given case, including that the "predominant" factors are laid out in *Brooks Furniture,* and the case, as a whole, must be exceptional. *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-00421-TBD-JDL, Doc. No. 364, p. 5 (E.D. Tex., Aug. 6, 2014) (Dyk, J.). *See Octane*, 134 S.Ct. at 1753-1758. Finally, the standard of proof is now a preponderance of the evidence. *Octane*, 134 S. Ct. at 1758.  However,

nothing in *Octane* suggests that such changes apply to cases retroactively, without reconsideration by district courts.

## VII.    SUMMARY OF THE ARGUMENT

Adjustacam did not extract nuisance settlements from any defendants. Adjustacam's settlements were directly related to each Defendants' number of infringing units and an established royalty. Newegg/Sakar's allegations about Adjustacam's "business model" are baseless hyperbole.    Newegg/Sakar's allegations of an "effective" royalty rate lower than $1.25 - $1.50 per webcam are based upon an unsworn report from Newegg's damages expert.  The District Court properly gave such unsworn evidence little, if any, weight.  In fact, the unsworn conclusions argued by Newegg/Sakar are deeply flawed.

Newegg/Sakar's appellate briefs on their unsuccessful Section 285 motions reads like *Daubert* motions, making lengthy arguments for how Adjustacam allegedly fell short of proving an "established royalty" or that prior licenses were "comparable" for purposes of a *Georgia-Pacific* reasonable royalty analysis.  Such arguments are legally and factually baseless, and also far afield of whether Adjustacam's settlement metrics consistent with its expert's opinions were reasonable and made in good faith.  The **[CONF]** and Philips licenses that Adjustacam relied upon to set its target royalty for settlement purposes were clearly "comparable" licenses, because they involved the same '343 patent and they were to

the same type of product, webcams.

Newegg's complaints about its settlement negotiations with Adjustacam are naïve and misguided.  Newegg's apparent belief that it should only pay unit royalties for past infringement while getting a license permitting future infringement, without paying any royalties for such future infringement, is baseless.

Adjustacam's infringement claims were reasonable and meritorious, and were certainly not brought in bad faith, nor were they objectively baseless.   What Newegg/Sakar alleges is a ball and socket joint is actually a constrained ball and socket joint because there is a channel that restricts movement, and this restricted movement results in two functionally independent joints which have ranges of movement independent of each other.   Newegg/Sakar's allegations that their webcams do not meet the "rotatably attached" element as construed by the Court are also baseless.  Adjustacam's infringement position (1) is correct from a technical perspective; (2) follows the Court's construction; (3) is properly supported by Adjustacam's technical expert; and (4) accords with the preferred embodiment.

Newegg/Sakar argues that the District Court somehow misunderstood the infringement issues.  To the contrary, the District Court was well aware of its claim construction ruling, and its implications, and how Newegg/Sakar's products function.

Newegg/Sakar's new arguments that their webcams lack a hinge member was

not included in their Section 285 motions filed with the District Court, and thus they are waived.  Further, Newegg/Sakar's new argument lacks factual merit.

Adjustacam's validity arguments were reasonable and meritorious. The District Court correctly found that "Defendants have failed to demonstrate that Adjustacam's validity arguments were baseless." (A0008).  As Adjustacam's technical expert has explained in detail, the Irifune publication fails to disclose how a camera fully screwed down is "rotatably attached," because the camera would be unable to rotate once attached.

Adjustacam did not "fabricate" a per-unit royalty to justify nuisance value settlements. Adjustacam's target royalty of $1.25 - $1.50 per webcam was established <u>years</u> prior to this lawsuit in the Phillips and **[CONF]** Licenses.  Its damages expert Mr. Bratic performed a detailed, reasoned and well-founded analysis for purposes of his expert report, which occurred well before any Section 285 Motion was threatened or filed. The running royalties in those licenses set the precedent that Adjustacam used throughout this case.

Newegg/Sakar's allegations of "bad faith" and "litigation misconduct" are merely hyperbole appended to their meritless arguments regarding infringement, validity, and settlements.  The District Court's well founded findings (*see* above and A0006-A0009) ran contrary to Newegg/Sakar's assertions.  These findings alone are enough to affirm the District Court's denial of Newegg/Sakar's Section 285

Motions.

Newegg's "cumulative" argument is a baseless and desperate attempt to lump together three meritless arguments into a "cumulative" basis for finding an abuse of discretion that simply did not occur. Newegg seeks to weave a litany of arguments with zero factual or legal merit into something that somehow "cumulatively" amounts to an abuse of discretion.

To the extent this Court deems it appropriate to retroactively apply *Octane* for the first time on appeal without remand for reconsideration, looking at the totality of the circumstances and the case as a whole – including the merit in Adjustacam's litigation positions, the lack of litigation misconduct, and the lack of bad faith, and when the District Court's factual determinations are given their due weight, it is inescapable that the District Court did not abuse its discretion.

Finally, this Court has subject matter jurisdiction over Adjustacam's appeal. At a minimum, Newegg/Sakar's allegations of exceptionality, bad faith and litigation misconduct based upon their interpretation of the District Court's construction of "rotatably attached," and Newegg/Sakar's arguments that their products failed to meet that claim limitation, provide an ongoing case or controversy that leaves this claim construction issue ripe for appellate review.

## VIII.    ARGUMENT

**A. Adjustacam did not extract nuisance settlements from any defendants. Adjustacam's settlements were directly related to each Defendants'**

**number of infringing units and an established royalty.**

Newegg/Sakar's allegations about Adjustacam's "business model" are baseless hyperbole. As explained above and in further detail in the expert report of Adjustacam's damages expert, Mr. Bratic, (A0525-A0578, e.g., at A0571-A0574) (e.g., "…There was an established royalty rate, from the **[CONF]** and Philips licenses…The **[CONF]** license would have been especially relevant because **[CONF]** was the leader in this market…In addition, under the Book of Wisdom, the parties to the hypothetical negotiations would have recognized that a significant number of companies in the industry accepted $1.25 to $1.50 as an appropriate royalty rate..."). As established by sworn testimony, Adjustacam's settlements in this case followed the $1.25 - $1.50 per webcam royalty which had been established years prior by Adjustacam's predecessor to the '343 patent with the Philips and **[CONF]** licenses. *See, e.g.,* (A0797:3-A7098:12).[14] Adjustacam's settlements with the various defendants are directly linked to their represented sales volumes and to this $1.25 - $1.50 per unit royalty. *See, e.g.,* (A0571) ("numerous suppliers and resellers agreed to pay actual or imputed royalty rates of at least $1.25 per unit."); (A0666:9-12) ("As to the 14 lump-sum payments, those licensees provided

---

[14] Newegg/Sakar complain that Adjustacam's Rule 30(b)(6) designee was not aware of the precise number of units sold by any settling defendants, but this was not even a Rule 30(b)(6) topic, and no one could be expected to recall such numbers with specificity long after the settlement discussions with those defendants had taken place.

Adjustacam with past sales information which was configured into their calculations to get to their imputed royalty rate of $1.25 to $1.50 per unit."); (A0717:6-16) ("Well, almost all the other licensees paid an effective actual royalty rate in the range of $1.25 to $1.50 based on the volumes that they represented to Adjustacam").

Newegg/Sakar also complain that Mr. Bratic "admitted that his opinion was not influenced by the cost or sales price of the accused products or the cost of the patented feature (a clip) of the accused products." However, Mr. Bratic was entirely correct in deeming manufacturing costs irrelevant to the reasonable royalty determination. (A0699:8-25 & A0700:21-22). Further, Mr. Bratic's determination of the appropriate reasonable royalty relied substantially on an established royalty rate. *See, e.g.*, A0789:20-790:18). With multiple licenses to parties across the distribution chain having the $1.25 - $1.50 actual or imputed royalty rate, Mr. Bratic was reasonable and justified in not adjusting the $1.25 - $1.50 rate for the sales price of each webcam. (A0531; A0690:17-22; A0692:7-A0693:10; A0694:8-18; A0695:25-A0696:5). Newegg/Sakar's allegations that lump sum licenses, almost all of which by their very terms were tied to a unit royalty rate,[15] were not actually tied to a unit royalty rate, is based rank speculation and unsworn argument.

Newegg/Sakar's allegations of an "effective" royalty rate lower than $1.25 - $1.50 per webcam are based upon an unsworn report from Newegg's damages expert

---

[15] *See, e.g.*, A0543-A0559 (expert report discussing licenses).

Dr. Sullivan.  The District Court properly gave such unsworn evidence little, if any, weight.  Newegg/Sakar's Briefs rely upon Newegg's damages expert's opinions without laying any predicate for those opinions being well founded or reliable.  In fact, they are deeply flawed.  For example, Dr. Sullivan's purported "imputed royalty" calculations (1) improperly include sales volumes for webcam sales for which no royalties were recoverable due to the lack of pre-suit marking, *see* (A1182-A1183) & (A0572);[16] (2) improperly fail to account for the fact that some defendants' infringing sales numbers declined via the doctrine of exhaustion once companies upstream of them took licenses, (A1172-A1173);[17] (3) improperly include sales numbers which were not provided to Adjustacam when the licenses were negotiated, *see* (A1185) & (A0544-A0577);[18] and (4) improperly include assumptions of linear

---

[16] *See, e.g.,* A0677:17-12 ("…the fact that **[CONF]** and Philips never marked their products, it was my understanding that AdjustaCam recognized that it could not seek royalties from any licensee prior to filing suit.")

[17] In contrast, Adjustacam's damages expert "eliminated overlapping sales in my royalty base at the retail level due to the exhaustion principle." (A0576).

[18] For example, Newegg has asserted that HP had potentially millions in actionable infringing sales, but the facts are far different.  The facts are that a foreign supplier, Chicony, had settled with Adjustacam outside of the litigation based upon representations of sales of its products in the United States. (A0672:18-22 ("Q. Did Mr. Wong represent to you that the license between Chicony and AdjustaCam was consistent with an established royalty of -- established per-unit royalty between $1.25 and $1.50? Based on the representations made by Chicony at the time, yes."); (A0783:6-19).  However, HP later informed Adjustacam that the vast majority of its webcams had come from the licensed supplier Chicony.  Whether Chicony misrepresented the extent of its U.S. sales or whether it was not counting units supplied to HP as U.S. sales is not none.  Nevertheless, as a result of the Chicony license and other licenses learned to be applicable to HP, Adjustacam's damages

sales into the future, (A1186-A1187), despite the fact that Newegg's expert also opines that webcam sales are in a decline. (A1169-A1170).

Newegg/Sakar's appellate briefs reads like *Daubert* motions, making lengthy arguments for how Adjustacam allegedly fell short of proving an "established royalty" or that prior licenses were "comparable" for purposes of a *Georgia-Pacific* reasonable royalty analysis. Newegg/Sakar's Brief pp. 22-23.    However, Newegg/Sakar did not make these arguments in their Section 285 motions filed with the District Court.  Rather, Newegg/Sakar argued in the District Court that it was "objectively baseless" for "Plaintiff and its damages expert [to maintain] that Adjustacam's settlement agreements (and demands) were based on a minimum target royalty of $1.25/unit," and that Adjustacam's expert's opinions "based on his understanding of what someone else viewed as a "target royalty" did "not meet the requirements of Rule 702." (A1782 – A1785).[19]  Newegg/Sakar's new arguments

expert revised his expert report and lowered the damage number for HP to $11,000. *Id.*  With its infringement exposure drastically reduced, HP entered into a settlement agreement for $20,000, which accounted for past infringement through the filing of suit and an estimation of future infringement through expiration of the '343 patent based upon declining sales. *Id.*

[19] This Court has held that unreliable expert testimony will not support a finding of litigation misconduct unless the circumstances are sufficiently egregious. *MarcTec*, 664 F.3d at 921. Newegg has not shown, and cannot show, that Adjustacam's damages expert's opinions consistent with Adjustacam's target royalty for settlement were unreliable, much less egregious.  Moreover, Newegg/Sakar did not raise a Rule 702 unreliability argument in their appellate briefs.  Thus, it has been abandoned and waived.

have been waived, *see, e.g., Golden Bridge, supra*, and should not be considered by this Court.

The **[CONF]** and Philips licenses that Adjustacam relied upon to set its target royalty for settlement purposes were clearly "comparable" licenses, because they involved the same '343 patent and they were to the same type of product, webcams. Further, if this appeal of the denial of Newegg/Sakar's Section 285 motions was the proper forum to litigate a *Daubert* motion on Adjustacam's damages expert's opinions, which clearly it is not, Newegg/Sakar's criticism of the licenses relied upon by Adjustacam and its damages expert would go to the weight, not the admissibility of, such licenses, and it would be up to the fact finder to sort out comparability and give them proper weight. *See, e.g., VirnetX, Inc. v. Cisco Systems, Inc.,* 767 F.3d 1308, 1330-31 (Fed. Cir. 2014).

Newegg/Sakar miss the point that, even though the proper measure of damages was disputed, Adjustacam was reasonable in relying upon the pre-existing **[CONF]** and Philips licenses in setting its target royalty for this case.

## B. Newegg's complaints about its settlement negotiations with Adjustacam are naïve and misguided.

Newegg's recitation of what occurred at mediation is incorrect and misguided. In the first instance, Newegg admits it disclosed infringing sales of approximately 20,000 units for approximately a year's worth of sales since suit had been filed. Applying Adjustacam's $1.50 royalty target to those units results in royalties of

$30,000 for past infringement.  For its opening settlement number Adjustacam naturally increased that number – to $75,000 – to account for both past <u>and</u> expected future infringement for the life of the '343 patent through March of 2017. (A0344). Newegg's apparent belief that settlements, which necessarily would include a license going forward for years in the future, should only include compensation for past infringement is incorrect and unrealistic.  Further, Newegg's apparent belief that an opening settlement offer must be a litigant's bottom line number is also incorrect and unrealistic.

At the mediation, Adjustacam explained that its settlement number was based upon a $1.50 per webcam metric, and that it took into account past infringement as well as some future infringement. *Id.*

Paradoxically, Newegg next complains that Adjustacam reduced its settlement offer to $65,000 in March 2012 after some of Newegg's suppliers had settled, thus bringing its number down.  This offer was also accompanied by a restatement of Adjustacam's $1.25 per webcam metric, and that its settlement number for Newegg was based upon past infringement and estimated future infringement *of those remaining suppliers*. *Id.*

Newegg next complains that Adjustacam made a $51,543 settlement offer on July 11, 2012.  Had Newegg bothered to ask for an explanation of how Adjustacam arrived at that number, it would have been informed that Adjustacam took its expert's

damage figure of $17,928 based upon two years of past infringement,[20] and then extrapolated a royalty number for future infringement based upon 3.75 more years of infringement (i.e., $33,615) through the term of the '343 patent, for a total of $51,543. The calculations supporting these numbers are irrefutable. Contrary to Newegg's baseless allegations, Adjustacam's settlement offers to Newegg were in each instance based upon Adjustacam's target unit royalty rate. There has been nothing improper about Adjustacam's settlement negotiations with Newegg.

Newegg's Brief makes clear that it had formed a corporate policy of refusing to settle patent infringement cases, irrespective of its damages exposure, when a product has relatively modest sales, even when that exposure decreases substantially due to settlements by its suppliers who saw the benefit of being licensed. It is certainly Newegg's prerogative to refuse settlements and demand its day in court; however, pursuing resolution via litigation, including through trial, is hardly exception in the patent *litigation* context. The merits of Adjustacam's infringement and validity positions, as found by the District Court in view of its claim construction ruling, illustrate that this case was not exceptional, no matter how much Newegg spent in order to make its point.

A ruling for Newegg, aside from being erroneous and violative of the

---

[20] Newegg's infringing sales numbers had decreased from before due to manufacturer settlements.

discretion that should be afforded the District Court's conclusions and rulings, would put a chill on the patentee's right to make prudent decisions such as were made here once Newegg's damages exposure became *de minimis* in view of upstream licenses, and it became prudent to proceed only against Sakar, which had not bothered to designate a damage expert, and which had ridden Newegg's coat-tails throughout the litigation.[21]   If anything, it would incentivize patentees to refuse settlements with Defendants whose damages exposure becomes *de minimis* due to others upstream being licensed, for fear that a fortuitoius dismissal accompanied by a *Super-Scak* covenant allowing continued infringement would be distorted into "bad faith" or other misconduct.

### C. Adjustacam's infringement claims were reasonable and meritorious, and were certainly not brought in bad faith, nor were they objectively baseless.

Newegg/Sakar's motions alleging non-infringement by the Kodak and allegedly "representative" RCM 8163 and Hercules Classic webcams lacks factual or technical merit.  The only non-infringement argument raised by Newegg/Sakar's Section 285 motions was the limitation in the two independent asserted claims (*i.e.*, claims 1 and 19) that the "hinge member" is "adapted to be rotatably attached" to the

---

[21] This Court has seen a demonstration of Sakar's riding Newegg's coattails when, according to Newegg, Sakar initially copied Newegg's appellate brief wholesale and without permission. *See* Doc 46-1, p. 1 ("Mr. Sutton copied Newegg's appeal brief essentially wholesale despite the fact that the brief that was shared with Mr. Sutton as a professional courtesy and under strict limitations on his use of the brief.").

camera.  However, as explained in detail above, Adjustacam's technical expert Dr. Muskivitch's infringement positions are entirely consistent with the Court's construction of "rotatably attached."  As stated by Dr. Muskivitch, there are "two distinct joints," and "[i]t's a separate motion; it's a separate functional joint." (A0473-A0483).  One of these independent joints – the one which allows the camera to pan left and right relative to its base – meets the claim limitation of the hinge member being rotatably attached to the camera in a single axis of rotation. (A0466; A0468; A0474-A0475; A0475-A0488; A0495-A0496; A0518-A0520).

Newegg/Sakar's allegation that their webcams do not meet the "rotatably attached" element as construed by the Court is also baseless.  Adjustacam's infringement position (1) is correct from a technical perspective; (2) follows the Court's construction; (3) is properly supported by Adjustacam's technical expert; and (4) accords with the preferred embodiment.

Newegg/Sakar argue that the District Court somehow misunderstood the infringement issues.  To the contrary, the District Court was well aware of its claim construction ruling and its implications.  The District Court fully appreciated that the channels in Newegg/Sakar's hinge members restrict the movement of what would otherwise be a ball and socket joint, that the restricted joint results in the camera being restricted to rotating about an axis parallel to the hinge member, and that in any given configuration the single axis of rotation which is defined by a vector

from the center of the connector through the central axis of the camera. This is entirely consistent with the technical explanation provided by Adjustacam's expert Dr. Muskivitch and relied upon by Adjustacam in the litigation.

### D. Newegg's new argument that its webcams lack a hinge member was not included in its Section 285 Motion filed with the District Court, and thus it is waived. Further, Newegg's new argument lacks factual merit.

Newegg's new argument that its allegedly "representative" webcams lack a hinge member (*see* Newegg's Brief at p. 13) was not included in its Section 285 Motion filed with the District Court, and thus it is waived. The general rule is "that a federal appellate court does not consider an issue not passed upon below." *Golden Bridge*, 527 F.3d at 1322 (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). "'[P]rudential considerations' articulated by the Supreme Court counsel against hearing new arguments for the first time on appeal absent limited circumstances." *Id*. at 1323. No limited circumstances exist in this case.

Further, Newegg's new argument lacks factual merit. As explained in the expert report of Adjustacam's technical expert Dr. Muskivitch, the Rosewill RCM8163 webcam has a hinge member (denoted with a green arrow) and a support frame (denoted with a red arrow), as follows:



(A1160-A1161). The camera has a first axis of rotation (noted with a blue circular arrow) relative to the hinge member. (A1160-A1160). The axis of rotation is a single axis of rotation which is defined by a vector from the center of the connector through the central axis of the camera. (A1161). It should be noted that at any tilt axis, the camera always turns on an axis which is perpendicular to the hinge member.

The support frame is rotatably attached to the hinge member. *Id.* The hinge member rotates about a second axis of rotation (noted with a yellow arrow), relative to the support frame. *Id.* This axis of rotation is defined by the axis of the hinge connection to the support frame. Thus, it is a single axis of rotation. *Id.*

As also explained in the expert report of Adjustacam's technical expert Dr. Muskivitch, the Hercules Classic webcam has a hinge member (denoted with a green arrow) and a support frame (denoted with a red arrow), as follows:



(A1042-A1043).  The camera rotates about a first axis of rotation (noted with a blue circular arrow) relative to the hinge member. (A1042).   The axis of rotation is a single axis of rotation which is defined by a vector from the center of the connector throu the central axis of the camera.   It should be noted that at any tilt axis, the camera always turns on an axis which is perpendicular to the hinge member.

Further, the support frame of the Herculses Classic is rotatably attached to the hinge member (A1043). The hinge member rotates about a second axis of rotation (noted with a yellow arrow), relative to the support frame. *Id.* This axis of rotation is defined by the axis of the hinge connection to the support frame. *Id.* Thus, it is a single axis of rotation. *Id.*

Newegg's new argument has been waived and, even if not waived, lacks factual merit and is wholly insufficient to establish that this case is "exceptional" in any respect.

**E. Adjustacam's validity arguments were reasonable and meritorious.**

The District Court correctly found that Adjustacam did not engage in litigation misconduct or otherwise act inappropriately (A0007) and that "Defendants have failed to demonstrate that Adjustacam's validity arguments were baseless" (A0008). The claims of the '343 patent duly issued from the USPTO and they are presumed valid by law. Newegg/Sakar complains that Adjustacam worked to protect its intellectual property rights by traversing rejections during reexamination proceedings for the '343 patent. However, Adjustacam had every right to traverse the USPTO's rejections, including because the USPTO's reasoning was flawed.

Newegg/Sakar's Section 285 motions alleged that Adjustacam's positions on validity *vis-a-vis* the Irifuni publication and the Ma patent were baseless. (A1789 & 1792-1793). In their brief, Newegg/Sakar have abandoned its arguments based upon Ma. Further, there was no finding by the District Court that Adjustacam's arguments were improper or baseless. This alone should be a sufficient basis for affirming the District Court's ruling.

Newegg/Sakar focus upon its contention that the Irifune publication meets the "rotatably attached" limitation in claims 1 and 19. However, Irifune does not meet the "rotatably attached" limitation in the Asserted Claims for the reasons set forth in the Report of Adjustacam's technical expert Dr. Muskivitch. (A0994). *See* (A0906) (Irifune). This is illustrated by Fig. 2 of Irifune and by the illustration of screw (9) as follows:



As stated in Dr. Muskivitch's report, a camera partially threaded onto camera attachment shaft 9 is not "rotatably attached because:

> camera attachment shaft 9 can freely pass through the opening of the camera fixed part 2. Thus, camera fixed part merely has a hole that allows the camera attachment shaft 9 to cleanly pass through and be screwed into a camera. Thus, Irifune merely disclose a hole that allows a camera attachment shaft 9 to pass there through and provide for secure tightening of the camera to be in contact with the camera fixed part 2 so that it is in a tight, stable, fixed position when fully screwed to the camera attachment shaft.

(A1010-A1011).    Further, the Muskivitch report describes how Irifune fails to disclose how a camera fully screwed down is "rotatably attached," including as follows:

> The purpose of the camera attachment shaft and screws is to attach the camera to the camera fixed part 2. Once the camera is attached to the camera fixed part 2, the camera cannot rotate about a first axis relative to the hinge member. . . the purpose of the camera attachment shaft 2 is to tightly secure the camera to the camera fixed part so that it does not rotate. . . Thus, for the camera to be rotatable, it must be un-tightened and thus unattached and unstable.

(A1010-A1011).    To summarize, Irifuni lacks a "rotatable attachment" because the

camera either has to be screwed tightly down, in which case it is not rotatable, or it has to be loosely appended via an unthreaded hole, in which case it is not attached. As set forth in detail in the Muskivitch Report, Adjustacam had ample basis, in fact meritorious basis, to contend that Irifune was not invalidating.

Newegg/Sakar takes issue with Dr. Muskivitch's interpretation of the District Court's construction of "rotatably attached," However, Dr. Muskivitch's opinions were based upon the claims as construed, and the Irifuni publication does not meet any reasonable interpretation of "rotatably attached" as construed by the District Court.    The Court construed "rotatably attached" as "connected such that the connected object is capable of being rotated."  However, as Adjustacam's expert Dr. Muskivitch explained in his report and deposition, the only way to connect the Irifuni to its hinge member was to screw it down tightly such that it could not rotate.

Newegg/Sakar's suggestion that a camera which is both attached and rotatable relative to a hinge member "would not be capable of rotation about any axis" are baseless.  The preferred embodiment disclosed throughout the '343 patent is both attached and rotatable at the same time.

Although the USPTO issued final rejections based upon Irifuni in September 2012, the USPTO took many months to reach a final decision.  Nonetheless, since the appellate process is lengthy and expensive, Adjustacam made the strategic decision, unrelated to the ongoing litigation, to cancel the asserted claims in order to

expedite the issuance of a reexamination certificate containing new and amended claims, all of which were deemed patentable over Irifune. *See* (A0369).

Moreover, Adjustacam had already filed a motion to dismiss Newegg/Sakar before the final rejection by the USPTO as a result of the GearHead and HP licenses, and Adjustacam renewed that motion once the asserted claims had been canceled. If anything, the voluntary dismissal of Newegg/Sakar prior to the USPTO's final rejection shows a lack of bad faith and a lack of litigation misconduct.

Newegg/Sakar allege that Adjustacam's distinctions of Irifuni were "objectively baseless" because "if the camera disclosed in the '343 Patent was "permanently fixed to," or had to be "fully tightened down to" the hinge member, then the camera could not rotate about the first axis of rotation as the Asserted Claims and specification require." Newegg/Sakar are both mistaken and confused. Newegg/Sakar are mistaken because a permanently attached camera can rotate about a first axis of rotation. In fact, the USPTO has acknowledged this. In particular, as a result of the reexamination proceedings instituted by Defendants, the USPTO has allowed multiple new claims, including independent claims 20 and 44, both of which comprise: "a hinge member adapted to be rotatably and permanently attached to the camera, said camera, when the hinge member is so permanently attached, rotating, about a first axis of rotation, relative to said hinge member . . ." (A0393-A0394; A0398-A0399). As stated by the USPTO,

Claim 22 requires "a hinge member adapted to be rotatably and permanently attached to the camera". Similarly, claim 40 requires "a hinge member adapted to be permanently rotatably attached to the camera" and claim 41 requires "a hinge member adapted to be permanently rotatably joined to the camera". This type of connection is not shown by the cited art.

(A0420). In the second part of their argument – which asserts that if a camera was "fully tightened down" to the hinge member, then the "camera could not rotate about the first axis of rotation as the Asserted Claims and specification require" – Newegg/Sakar are confused as this is one of the reasons that Irifuni does not meet the "rotatably attached" limitation. Apparently, in their confusion, Newegg/Sakar agree with Adjustacam's position distinguishing Irifune, yet believe Irifune is still somehow so invalidating, that arguments against it are "objectively baseless."

Finally, Newegg/Sakar argue that "the arguments advanced by Plaintiff and its expert contradicted Plaintiff's proposed construction of 'rotatably attached' in this very litigation because an object 'permanently fixed' to another object is not 'capable of being rotated.'" Here again, as noted above, the USPTO has agreed with Adjustacam that being permanently attached is not inconsistent with being rotatably attached.

## F. Adjustacam did not "fabricate" a per-unit royalty to "justify nuisance value settlements."

As set forth in detail in above, Adjustacam's target royalty of $1.25 - $1.50 per webcam was established <u>years</u> prior to this lawsuit in the Phillips and **[CONF]**

Licenses.  Adjustacam did not "fabricate" anything.  Its damages expert Mr. Bratic performed a detailed, reasoned and well-founded analysis for purposes of his expert report, which occurred well before any Section 285 Motion was threatened or filed. The running royalties in those licenses set the precedent that Adjustacam used throughout this case.  In fact, twenty settling defendants agreed with Adjustacam's royalty metric and paid lump sums according to that established royalty rate. Here again, Newegg/Sakar have not shown that the methodology employed by Adjustacam's damages expert is unsound.  Newegg/Sakar's criticisms involve, at most, a battle of the experts, and they go, if anything, to the weight that a jury would be entitled to give to Mr. Bratic's opinions.  Despite Newegg/Sakar's distortions and mischaracterizations of the facts, in reality the settling defendants paid a reasonable royalty based upon their level of infringement and tied to prior and expected future sales, which are reasonable bases.

### G. There has been no bad faith or litigation misconduct by Adjustacam.

Newegg/Sakar's allegations of "bad faith" and "litigation misconduct" are merely hyperbole appended to their meritless arguments regarding infringement, validity, and settlements.  However, including for the reasons discussed above, the District Court weighed the facts and engaged in a wholesale rejection of Newegg/Sakar's meritless positions.  The District Court's well founded findings contrary to Newegg/Sakar's assertions include (1) that "the constrained ball and

socket joint could meet the claim limitation which requires the hinge member being rotatably attached to the camera along a single axis of rotation," (A0006); (2) that "one could reasonably argue Defendants' products meet the 'rotatably attached' limitation"; (A0006); (3) that "Adjustacam's infringement theories are not objectively baseless;" (A0006); (4) that "there is insufficient evidence that the action was brought in bad faith and for an improper purpose," (A0006); (5) that Adjustacam's settlements did not lead to conclusion that Adjustacam acted in bad faith, (A0006 – A0007); (6) that "Adjustacam noted that its damages model for many of the defendants was small … [t]herefore, other defendants in this action would have necessarily settled for small amounts," (A0007); (7) Adjustacam did not engage in litigation misconduct or otherwise act inappropriately (A0007); (8) that "Defendants have failed to demonstrate that Adjustacam's validity arguments were baseless," (A0008); and (9) that "[w]hile Defendants may disagree with Adjustacam's methodology of calculating damages, there is no evidence this theory was so outrageous and unreliable to support an award of attorney fees." (A0009). These findings alone are enough to affirm the District Court's denial of Newegg/Sakar's Section 285 Motions.

## H. Newegg's Complaints About its Separate Motion for Costs, which was Not included in this Appeal, are Irrelevant and Mistaken.

Newegg's Brief apparently seeks to impugn the District Court by complaining that it was not awarded costs amounting to less than $9,000. Newegg seems

incapable of understanding that an award of costs to the prevailing party under Rule 54(d)(1) (including to a party who wastes the District Court's time with attempting a mini-trial of every issue in the case in the form of a groundless 285 motion) is not mandatory. *See* Fed. R. Civ. P. 54(d)(1). Indeed, the Fifth Circuit has held that "Fed. R. Civ. P. 54(d) permits the court to exercise its discretion and withhold an award of costs." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992). The Fifth Circuit has also recognized that "a wide range of reasons have been invoked to justify withholding costs." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006). Contrary to Newegg's assumptions, the clear explanation for the absence of any order concerning the Newegg's request for costs is that the Court exercised its discretion not to award them. This is not a situation where a judgment is silent as to costs leaving a court's intentions ambiguous. The District Court's Final Judgment squarely addressed the issue of costs and affirmatively denied them by providing that they are borne by the party that incurred them.

Newegg's real complaint, which is also irrelevant to this appeal, is that he District Court did not more promptly rule on its motion to correct the judgment to include costs. However, instead of acting prudently to seek a more prompt ruling on a motion which had probably "fallen through the cracks" since the case was effectively closed on the District Court's docket, Newegg voluntarily withdrew its motion, likely based upon an acknowledgement that the District Court was unlikely

to "correct" its explicit non-award of costs once it addressed Newegg's motion. In either event, Newegg's request for fees was not granted and the District Court's discretion should not be disturbed.

## I.  Newegg's "cumulative" argument is a baseless and desperate attempt to lump together three meritless arguments into a "cumulative" basis for finding an abuse of discretion that simply did not occur.

It is a mathematical fact that zero plus zero still equals zero. Yet Newegg seeks to weave a litany of arguments with zero factual or legal merit into something that somehow "cumulatively" amounts to an abuse of discretion. Newegg's "cumulative" argument purports to lump together "several rulings—and absence of rulings" into an abuse of discretion. However, it actually complains about three things.

Newegg's first "cumulative" complaint is directed to the District Court's non-award of costs, something that Newegg did not appeal and which is already addressed above. In short, the District Court soundly acted within its discretion not to award costs, and instead of taking prudent steps to secure a speedier ruling on its motion to "correct" the judgment to include a cost award, Newegg voluntarily withdrew its claim for costs. A0176. Thus, Newegg's complaint is irrelevant, and if anything, is waived because Newegg voluntarily withdrew its claim for costs. This argument with zero merit does not "cumulatively" add up to an abuse of discretion.

Newegg's second "cumulative" complaint is that the District Court denied its

Section 285 Motion.  This has already been addressed above.  In short, there has been no litigation misconduct or other grounds for an exceptional case finding. The District Court ruled appropriately and Newegg has not shown any clear error in the District Court's factual determinations or any abuse of discretion.  Moreover, Newegg's logic is deeply flawed that the denial of its Section 285 Motion somehow has a "cumulative" effect showing that the denial of its Section 285 Motion was an abuse of discretion. This circular argument has zero merit and does not and cannot "cumulatively" add up to an abuse of discretion.

Newegg's third and final "cumulative" complaint is that the District Court denied its claim for expert fees.  This has already been addressed above.  In short, Newegg has made no showing that this exceptionally high standard was met.  The fact that Newegg got to the point of designating experts illustrates that its non-infringement would not be apparent to a "child," that its anticipation allegations based upon the Irifune publication needed expert support to bolster them, and that the issues in this suit were legitimately contested.  At least for the reasons noted above that the District Court acted appropriately in denying Newegg's attorney's fee claim, including that this case was not a "nuisance" case, Newegg has not shown any clear error in the District Court's factual determinations or any abuse of discretion.  Moreover, Newegg's logic is deeply flawed that the denial of its motion for a discretionary fee award somehow has a "cumulative" effect showing that the

denial of its Section 285 Motion or the fee motion itself was an abuse of discretion. This circular argument with zero merit also does not "cumulatively" add up to an abuse of discretion.

### J. The District Court did Not Commit Clear Error, Nor did it Abuse its Discretion, in Denying Newegg/Sakar's Motions.

As noted above, Newegg/Sakar have waived application of *Octane*'s looser standard for exceptional case findings.  Under the prior *Brooks Furniture* standard, which Newegg/Sakar argued to the District Court as the applicable standard, Newegg/Sakar was required to establish by clear and convincing evidence that Adjustacam had committed misconduct in the course of the litigation, or (1) that the litigation was brought in subjective bad faith, and (2) the litigation was objectively baseless. *Highmark*, 687 F.3d at 1308 (citing *Brooks Furniture*).  Newegg/Sakar failed to meet this burden.

The District Court's factual findings and conclusions all properly ran contrary to Newegg/Sakar's argument.  Newegg/Sakar have not shown that the District Court's factual findings constitute clear error.  Rather, the facts show that, when Newegg/Sakar's baseless hyperbole and speculation is stripped away, the facts squarely support the District Court's factual determinations.  Further, when the District Court's factual determinations are given their due weight, it is inescapable that the District Court did not abuse its discretion in denying the relief sought.

To the extent this Court deems it appropriate to retroactively apply *Octane* for

the first time on appeal without remand for reconsideration, or argument by Newegg/Sakar, in the District Court, under *Octane* fees should be awarded under Section 285 only in "rare cases and in a discretionary manner, assessing various factors to determine whether a given case was sufficiently 'exceptional' to warrant a fee award" and considering "the totality of the circumstances." *Octane*, 134 S.Ct. at 1753-54. Here, again, the District Court's factual findings and conclusions all properly ran contrary to Newegg/Sakar's contention that the denial of their motions should be reversed. Newegg/Sakar have not shown that the District Court's factual findings constitute clear error. Rather, the facts show that, when Newegg/Sakar's baseless hyperbole and speculation is stripped away, the facts squarely support the district Court's factual determinations. Further, looking at the totality of the circumstances and the case as a whole – including the merit in Adjustacam's litigation positions, the lack of litigation misconduct, and the lack of bad faith, and when the District Court's factual determinations are given their due weight, it is inescapable that it was not an abuse its discretion for the District Court to deny the relief sought.

Newegg's complaint about the timing of its dismissal lacks merit. Adjustacam dismissed Newegg once its final supplier defendants, HP and Gearhead, had taken licenses, thus cementing the damages against Newegg into *de minimis* territory from only its house brand, Rosewill. Further, Adjustacam dismissed Newegg to focus its

efforts upon the much larger defendant Sakar, who had failed to file a damages expert report.  Had the case gone to trial, Newegg would have been adjudged an infringer and it would have incurred even more costs to get there.  The timing of Newegg's dismissal was fortuitous to Newegg, rather than evidence of bad faith or an exceptional case.

Sakar's complaint about the timing of its dismissal likewise lacks merit.  While Adjustacam disputed the USPTO's cancellation of the Asserted Claims, it did not appeal the cancellation so that multiple new and amended claims could issue with a reexamination certificate.   Because all Asserted Claims had been canceled, Adjustacam took the prudent and necessary step of dismissing Sakar from the lawsuit.   The timing of Sakar's dismissal was fortuitous to Sakar, rather than evidence of bad faith or an exceptional case.

Newegg seems to suggest that because its damages exposure was never in excess of the likely cost of patent litigation, somehow this morphs a meritorious case into an exceptional one.  To the contrary, Adjustacam has the legal right to hold infringers liable to pay a reasonable royalty for their infringement, even if the product at issue has waned in popularity and does not generate millions of dollars in sales.  It is Newegg's choice to refuse reasonable settlements[22] and to vigorously fight all

---

[22] Newegg complains about Adjustacam's settlement offers made during the case, but Newegg never once made a counter-offer in order to make a good faith attempt to settle the matter.  It is hardly evidence of bad faith where one side is continually

patent cases regardless of the merits, but that choice does not change the merits of this case (as found by the District Court), even when Newegg is ultimately fortuitously dismissed when its exposure decreases due to settlements by others upstream.

Finally, for at least the same reasons that Newegg/Sakar's Rule 285 allegations lack legal or factual merit, Newegg/Sakar have shown no abuse of discretion or clearly erroneous findings to justify a reversal of the District Court's non-exercise of its inherent authority to award expert witness fees. "A district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." MarcTec, 664 F.3d at 921. However, this authority "is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." Id. Newegg/Sakar have shown no basis for such a finding, much less any error by the District Court in not awarding expert fees.

Further, any sanctions in the form of an expert fee award would require specific findings from the District Court that Adjustacam acted in bad faith. *See Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998) (sanctions under a court's inherent powers require a "specific finding that the [party] acted in bad faith."); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1392 (Fed. Cir. 2008) (Bryson, J.,

---

attempting to settle as the case progresses.

concurring) ("Where, as here, the district court's award of attorney fees under section 285 and expert witness fees under its inherent authority are predicated on the same conduct, the district court must offer a reasoned explanation for why the award of attorney fees and expenses under section 285 is not a sufficient sanction for the conduct in question."). In contrast, here the District Court found "there is insufficient evidence that the action was brought in bad faith and for an improper purpose." (A006).

The District Court's factual findings and conclusions all properly ran contrary to Newegg/Sakar's arguments.  Newegg/Sakar have not shown that the District Court's factual findings constitute clear error.  Rather, the facts show that, when Newegg/Sakar's baseless hyperbole and speculation is stripped away, the facts squarely support the District Court's factual determinations.  Further, when the District Court's factual determinations are given their due weight, it is inescapable that the District Court did not abuse its discretion in denying the relief sought.

Newegg's request that this Court take the "opportunity to clarify that litigation brought for the purposes of extorting nuisance-value settlements is exceptional" is inapposite, because the facts – including as determined by the District Court – do not support that this litigation was brought for the purposes of extorting nuisance value settlements.  The worst that can be said is that Adjustacam's patent covered products with marginal popularity, but Adjustacam has every right to seek redress for

infringement of its patents, rather large or modest.

Nobody disagrees that nuisance litigation should be discouraged, but the facts – including as determined by the District Court – simply do not support a finding of this being a nuisance case. Newegg argues that Section 285 is frustrated if a party could dismiss its case to avoid losing on the merits. However, the District Court addressed Newegg/Sakar's baseless allegations about the weakness of Adjustacam's infringement and validity positions, and the District Court made a wholesale rejection of Newegg/Sakar's allegations.

**K. This Court has subject matter jurisdiction over Adjustacam's appeal.**

The matters before this Court involve Adjustacam's appeal of the District Court's construction of "rotatably attached," as well as Newegg/Sakar's cross-appeal of the District Court's denial of their Section 285 Motions. Although Adjustacam's infringement positions were meritorious under District Court's claim construction ruling, Newegg/Sakar's misunderstanding and distortion of that ruling has led Newegg/Sakar to erroneously allege that Adjustacam's infringement positions lacked merit on the "single axis of rotation" limitation of the "rotatably attached" element. Although Adjustacam's infringement theories were meritorious (as the District Court correctly found) in view of the District Court's construction of "rotatably attached," Newegg/Sakar have not contended that Adjustacam's infringement theory was meritless absent the "single axis of rotation" requirement

imposed by the District Court.  However, without their erroneous interpretation of the "single axis of rotation" requirement, Newegg/Sakar would not be advancing any non-infringement arguments at all.

Newegg/Sakar's assertion that there is no "case or controversy" over the District Court's construction of "rotatably attached" is thus unfounded.  If the District Court's construction of "rotatably attached" is reversed by this Court, then Newegg/Sakar's view of the "single axis of rotation" requirement would be a nullity, and its Section 285 arguments would largely be a nullity and could not possibly succeed.

Adjustacam did indeed dismiss its patent infringement claims with prejudice once the Asserted Claims had been canceled and once the District Court had lost jurisdiction over the case due to the covenant not to sue afforded Newegg/Sakar. However, Federal Circuit jurisdiction depends on whether the plaintiff's complaint as amended raises patent law issues. *Chamberlain Group, Inc., v. Skylink Technologies, Inc.*, 381 F.3d 1178 (Aug. 31, 2004).  Where, as here, all of the patent claims in the amended complaint were dismissed prior to the appeal, the dispositive question is whether the dismissal was with or without prejudice. *Id.* at 1189. Dismissals with prejudice are adjudications on the merits, and not constructive amendments to the complaint. *Id.* at 1189-90.  In such cases, this Court retains jurisdiction to hear "all appeals on all issues." *Id.* at 1190.

An appeal from a final judgment brings before the appellate court all underlying issues in a case. *See, e.g., Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) ("a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits"); *United States v. Clark*, 445 U.S. 23, 25 n.2 (1980) (appeal from final judgment brings up all antecedent issues); *see also Pandrol USA, LP. v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1363 (Fed. Cir. 2003) (where the district court "evinced a clear intent to resolve or dispose of all claims and end the case[,]" there was a final judgment subject to appellate jurisdiction under 28 U.S.C. § 1295(a)(1)); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1311 (Fed. Cir. 2009) (similar); *Anderson v. Aon Corp.*, 614 F.3d 361, 364 (7th Cir. 2010) (Easterbrook, J.) ("[A]n appeal from a final decision brings up all interlocutory rulings for appellate resolution. . . . [O]ur review of the final decision includes all issues that affected the judgment.").

Under these circumstances in which Newegg/Sakar argue there is an exceptional case because Adjustacam's infringement theory allegedly contradicted the District Court's claim construction ruling, "[t]he controversy therefore remains live." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 n.7 (2005). Although Adjustacam can no longer sue Appellees over the covenanted and dismissed claims, Appellees have created and maintained a controversy over whether it was reasonable for Adjustacam to assert that they had previously infringed

such claims.

Further, it cannot be said that Adjustacam waived its right to appeal. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). No such intentional relinquishment or abandonment has been shown. Adjustacam made it clear that it disagreed with the Magistrate Judge's construction of "rotatably attached" when it lodged objections and "appealed" that ruling to the District Court pursuant to Federal Rule of Civil Procedure 59. A2436.

Further, Adjustacam ultimately dismissed Appellees because the District Court lacked jurisdiction due to the lack of a case or controversy because (1) all Asserted Claims had been canceled during reexamination proceedings; and (2) because a covenant-not-to sue had been provided. *See Super-Sack, supra.* Under such circumstances, it cannot be said that Adjustacam waived or abandoned infringement (or related claim construction) issues over which there was simply no continuing jurisdiction by the District Court.

This Court's jurisdiction is "generally limited to final judgments." *SanDisk Corp. v. Kingston Technology Co., Inc.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012). Yet in the present case, both Appellant and Appellees have appealed, (A191; A195), the District Court's final judgment which had adjudged "that the parties take nothing" (A002) based primarily upon Appellees' erroneous view of the District Court's

erroneous construction of the "rotatably attached" claim terms at issue in Adjustacam's appeal.

This Court has held that dismissed claims must "present a current infringement controversy" or "affect the infringement controversy." *See SanDisk*, 695 F.3d at 1353 *(*"present a current infringement controversy"); *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed.Cir.2008) ("affect the infringement controversy"). Here the allegations of Appellees (in their briefing in the District Court and in this Court) that Adjustacam's infringement positions lacked merit maintain a controversy over the issue of infringement, and thus they both "present a current infringement controversy" and "affect the infringement controversy."

Dismissals divest this Court of jurisdiction only if "[t]he parties were left in the same legal position with respect to [all] patent claims as if they had never been filed." *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1353 (Fed. Cir. 2010) ("We have jurisdiction over this case because the parties were not left in the same legal position as if the '105 patent claim had never been filed."); *Chamberlain Group,* 381 F.3d at 1190. *See also Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1343 (Fed. Cir. 2008) (Court had jurisdiction over appeal of claim construction ruling following stipulated judgment of non-infringement).

Here, according to Newegg/Sakar's asserted theory under Section 285, the

District Court's *Markman* ruling that Adjustacam has appealed did not leave the parties in the same legal position as if it had never been filed. Thus, there is a case or controversy over which this Court has subject matter jurisdiction.  There is no case or controversy, and a suit becomes moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013).  But a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.*  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.*

## IX.    CONCLUSION AND PRAYER

For the reasons stated herein, Plaintiff-Appellant, Adjustacam LLC, respectfully submits that Newegg/Sakar have failed to show clear error or an abuse of discretion, and the District Court's opinion denying Newegg/Sakar's motions for attorney's and expert fees must be affirmed.  Further, this Court has jurisdiction over Adjustacam's appeal of the District Court's claim construction order, and the District Court's construction of "rotatably attached" should be reversed for the reasons stated in Adjustacam's Opening Brief.

Dated: December 11, 2014                    Respectfully submitted,

                                            /s/ *John J. Edmonds*
                                            John J. Edmonds
                                            Stephen F. Schlather
                                            Shea N. Palavan

COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone:  (281) 501-3425
Fax:  (832) 415-2535
jedmonds@cepiplaw.com
sschlather@cepiplaw.com
spalavan@cepiplaw.com

ATTORNEYS FOR PLAINTIFF-
APPELLANT ADJUSTACAM, LLC

## X.    CERTIFICATE OF SERVICE

I, John J. Edmonds, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On December 11, 2014 a copy of the foregoing CORRECTED NON-CONFIDENTIAL RESPONSE AND REPLY BRIEF OF PLAINTIFF-APPELLANT ADJUSTACAM LLC TO THE PRINCIPAL AND RESPONSE BRIEFS OF CROSS-APPELLANTS NEWEGG, INC., NEWEGG.COM, INC., ROSEWILL, INC., AND SAKAR INTERNATIONAL, INC. was filed electronically with the Clerk of the Court using the CM/ECF System, which will serve via electronic mail notice of such filing to all counsel registered as CM/ECF users.

Upon acceptance by the Court of the electronically filed document, six paper copies will be filed with the Court via courier within the time provided by the Court's rules.

Dated: December 11, 2014          /s/ *John J. Edmonds*
                                  John J. Edmonds

                                  COLLINS, EDMONDS, POGORZELSKI,
                                  SCHLATHER & TOWER, PLLC

**XI.    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A), because it contains <u>13,982</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Dated: December 11, 2014           */s/ John J. Edmonds*
                                   John J. Edmonds

                                   COLLINS, EDMONDS, POGORZELSKI,
                                   SCHLATHER & TOWER, PLLC